PEOPLE v MOORE

Docket No. 80432. Argued May 3, 1988 (Calendar No. 1). Decided May 8, 1989.

Timothy Moore was convicted by a jury in the Detroit Recorder's Court, Michael J. Talbot, J., of second-degree murder and possession of a firearm during the commission of a felony, and was sentenced to a term of from 100 to 200 years in prison so as to foreclose parole. The Court of Appeals, SULLIVAN, P.J., and GRIBBS and E. C. PENZIEN, JJ., affirmed in an unpublished opinion per curiam, holding that the sentence was not cruel or unusual punishment and that the sentencing judge had not abused his discretion (Docket No. 89319). The defendant appeals.

In an opinion by Justice CAVANAGH joined by Justices LEVIN, BRICKLEY, and ARCHER, the Supreme Court *held:*

A term of years must be an indeterminate sentence less than life that is reasonably possible for a defendant to serve.

1. A person convicted of second-degree murder may be punished by imprisonment for a fixed term—life—or for an indeterminate term of years less than life. In this case, the entire interval between the defendant's minimum and maximum sentences is certain to occur after his death, and thus is not indeterminate.

2. With the exception of persons convicted of first-degree murder or controlled substance offenses, persons sentenced to life in prison or to a term of years are eligible for parole consideration. There is no provision under Michigan law for the imposition of a nonparolable term of years. A sentencing judge does not have the lawful authority to preclude parole for a person sentenced to life in prison.

3. The effective length of the sentence imposed in this case, life imprisonment, is neither shocking nor an abuse of the trial court's sentencing discretion. However, in imposing a sentence which is impossible to serve, thereby foreclosing for himself or a successor the future exercise of the discretion with regard to

REFERENCES

Am Jur 2d, Criminal Law §§ 542, 606.
See the Index to Annotations under Indeterminate Sentence.

parole clearly provided by the Legislature in cases where a person convicted of second-degree murder is sentenced to life imprisonment, the sentencing judge abused his discretion, requiring reversal and remand for resentencing.

Reversed and remanded.

Justice BOYLE, joined by Chief Justice RILEY and Justice GRIFFIN, dissenting, stated that the issue in this case is not whether the defendant can serve the sentence imposed, but, rather, whether the court can lawfully impose it. The term prescribed for second-degree murder is life or any term of years. Giving the words their ordinary meaning, the language of the statute does not evidence an intent to confine a term of years to a term less than a defendant's life expectancy. Rather, "any term of years" plainly means a term of years without limitation as to duration. There is no basis for the conclusion that the alternative of a life sentence is a sentence of a term of years less than life.

A sentence which is authorized by statute and which bears a reasonable relationship to a legitimate sentencing goal does not constitute an abuse of discretion. Nor is it an abuse of discretion for a trial court to foreclose its or a successor's sentencing discretion where, as in this case, the Legislature effectively has foreclosed judicial and parole board discretion regarding release prior to serving a minimum term.

In this case, the sentence imposed was within the authority legislatively granted to the trial court. There is no support for the construction of the statute offered in the lead opinion.

CRIMINAL LAW — SENTENCING — INDETERMINATE SENTENCES.

A sentence imposed for a term of years must be an indeterminate sentence less than life that is reasonably possible for a defendant to serve.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief, Criminal Division, Research, Training and Appeals, and *Mary Sue Czarnecki,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *P. E. Bennett* and *Fred E. Bell*) for the defendant.

Amicus Curiae:

*Elizabeth L. Jacobs* for Joseph Cole.

CAVANAGH, J. The defendant has been convicted of second-degree murder[1] and sentenced to a term of from 100 to 200 years in prison. He argues that the sentence is unlawful. We agree, and we therefore remand this case to the trial court for resentencing.

I

In February of 1985, the defendant killed a woman with whom he had been romantically involved. The defendant was prosecuted for first-degree murder[2] and for possession of a firearm during the commission of this felony.[3]

Three witnesses testified at the defendant's trial. With minor variations, they testified as follows. The victim and her current fiancé were home when the defendant and the defendant's sister arrived.[4] The defendant sought to speak with the victim. After a time, the defendant produced a pistol from a briefcase and took the victim to another room, out of the witnesses' sight. The victim was heard pleading not to be killed and then one or two shots were heard. The victim's fiancé went to get help, and the defendant's sister fled. On his return, the victim's fiancé found her "laying [sic] in the kitchen [with] quite a few stab wounds to the chest." The defense introduced no proofs.

The jury found the defendant guilty of second-degree murder and felony-firearm. As noted by the

---

[1] MCL 750.317; MSA 28.549.

[2] MCL 750.316; MSA 28.548.

[3] MCL 750.227b; MSA 28.424(2).

[4] The victim's present fiancé and the defendant's sister were two of the witnesses at trial. The third was a police officer who was called to the scene after the homicide took place.

sentencing judge, the presentence report in this case indicated that the defendant had a history of assaultive crime and that the defendant had been harassing the victim, and perhaps planning to harm her, for some time. The defendant did not challenge the accuracy of the presentence report.

The sentencing judge imposed a term of from 100 to 200 years in prison for second-degree murder.[5] In doing so, he clearly stated that the purpose of the 100- to 200-year sentence was to foreclose parole:

> Because the appellate courts of our state have said that in point of fact a life sentence for this sort of crime allows him to be reviewed in ten years, I intend to utilize numbers with the belief that the law requires that the numbers be served before you become eligible for review.[6]

II

The Court of Appeals affirmed the convictions and sentence.[7] The Court said that the defendant's 100- to 200-year sentence was not cruel or unusual punishment[8] and that the sentencing judge had not abused his discretion:

> A sentence does not constitute cruel and unusual punishment when it is within statutory limits and does not shock the judicial conscience. *People*

---

[5] The defendant was also sentenced to serve a two-year consecutive term of imprisonment for felony-firearm.

[6] Of course, it is the Legislature, in enacting MCL 791.234(4); MSA 28.2304(4) in 1941 and revisiting this act through eight amendments, rather than "the appellate courts of our state" which has stated the parole-eligibility rule found in the so-called "lifer law," MCL 791.234(4); MSA 28.2304(4).

[7] *People v Timothy Moore,* unpublished opinion per curiam of the Court of Appeals, decided February 19, 1987 (Docket No. 89319).

[8] Const 1963, art 1, § 16.

*v Curry,* 142 Mich App 724, 733; 371 NW2d 854 (1985); *People v Knoll,* 137 Mich App 701, 704; 358 NW2d 926 (1984).

Here, the sentence was within the "life or any term of years" sentence authorized by statute, MCL 750.317; MSA 28.549. Moreover, we believe that, contrary to defendant's argument, the fact that parole will not be available prior to defendant's life span does not make the sentence erroneously harsher than a life sentence. *People v Rodgers,* 30 Mich App 582, 584-585; 186 NW2d 840 [1971]; *People v Charles Williams,* 19 Mich App 544, 546; 172 NW2d 897 (1971), lv den 386 Mich 783 (1972).

This case is similar to *People v Martinez,* 147 Mich App 94; 382 NW2d 741 (1985), lv den 425 Mich 873 (1986), cited by plaintiff. In *Martinez,* defendant was convicted of manslaughter and habitual offender, fourth offense, and was sentenced to a prison term of 100 to 150 years. Defendant claimed, inter alia, that the sentence was an abuse of discretion because it was longer than his life expectancy and designed to prevent him from qualifying for parole. This Court rejected these arguments, concluding:

"First, it was evident that the sentence imposed was fashioned to insure that Mr. Martinez would never be a free man again. The trial judge quite pointedly stated that he intended 'to design a sentence that will mean that Mr. Martinez will not be released from prison.' Under the statute, MCL 769.12; MSA 28.1084, the trial court had the authority to sentence Mr. Martinez for life or for any lesser term. The trial judge obviously selected the long term of years instead of life in hopes that the 'lifer law,' MCL 791.234(4); MSA 28.2304(4), would not apply so as to make Mr. Martinez eligible for parole consideration after serving ten calendar years. See *People v Johnson,* 421 Mich 494; 364 NW2d 654 (1984). We are persuaded that the trial court did not err in imposing a lengthy term of years where such a sentence is expressly authorized by statute and warranted by a dispas-

sionate consideration of legitimate sentencing criteria and objectives.

"The second aspect of Mr. Martinez's argument is that, in effect, the trial court imposed a sentence which will exceed his life expectancy. Obviously, that was the trial court's intent and there is no showing that such a sentence was not justified. In fact, there is no claim that this sentence should shock this Court's conscience nor could there be. Mr. Martinez's extensive prior record fully supported the imposition of the sentence in this case." 147 Mich App at 95-96.

Similarly, the trial court here specified that it wanted to impose a sentence that would keep defendant in prison for the rest of his life, while preventing the possibility that defendant would be paroled in 10 years under the "lifer law." The trial court also considered the "heinous and shocking" nature of the crime, defendant's prior criminal record, deterrence and the needs to protect society and to punish defendant. These factors were all legitimate and, considering these factors, the sentence does not shock the conscience of this Court. The mere fact that the sentence exceed's [sic] defendant's life expectancy does not change this result. *People v Martinez, supra; People v Coles,* 417 Mich 523; 339 NW2d 440 (1983). See also *People v Crawford,* 144 Mich App 86 [88]-90; 372 NW2d 688 (1985). Cf. *People v Hurst,* [155] Mich App [573; 400 NW2d 685 (1986)].

We granted leave to appeal to consider several aspects of the sentence imposed in this case.[9] *People v Timothy Moore,* 429 Mich 858 (1987).

---

[9] We granted leave to appeal "[l]imited to the issue whether the 100- to 200-year sentence was (1) contrary to the intent of the Legislature in enacting the indeterminate sentencing act, (2) cruel or unusual punishment, (3) an abuse of discretion to the extent that it is shocking to the conscience of an appellate court, and (4) contrary to the separation of powers doctrine."

III

A. THE PENALTY FOR SECOND-DEGREE MURDER

Employing language used in connection with a number of other offenses,[10] the Legislature has established that second-degree murder "shall be punished by imprisonment in the state prison for life, or any term of years, in the discretion of the court trying the same."

On its face, the stated penalty for second-degree murder ("life, or any term of years") indicates that a term of years is a lesser penalty than life.[11] This is well explained in *People v Oscar Moore,* 164 Mich App 378, 389-391; 417 NW2d 508 (1987).[12] In that case, the defendant had been given a 100- to 300-year term of imprisonment following a conviction of armed robbery. The Court of Appeals built upon the majority opinion in *People v Johnson,* 421 Mich 494; 364 NW2d 654 (1984), to reach the conclusion that "any term of years" must mean a period shorter than life.

We believe that [certain earlier decisions] mis-

[10] See *People v Blythe,* 417 Mich 430, 435, n 2; 339 NW2d 399 (1983).

[11] Dissenting in *People v Johnson,* 421 Mich 494, 500; 364 NW2d 654 (1984), Justice BOYLE characterized as "anomalous" the possibility that one could be paroled from a life sentence earlier than a sentence for a term of years. In *People v Hurst (After Remand),* 169 Mich App 160; 425 NW2d 752 (1988), the Court of Appeals concluded that, under present law, one is better off receiving a life sentence than a term of from 40 to 80 years in prison. Though our opinion today necessarily supports that conclusion, we otherwise offer no comment on that conclusion of *Hurst,* except to observe that it is for the Legislature to correct real and perceived inconsistencies in statutory sentencing law. We further note that the Legislature has not amended MCL 791.234(4); MSA 28.2304(4) in the five years since this Court decided *Johnson.*

[12] In *Oscar Moore,* this Court ordered that the prosecutor's application for leave to appeal and the defendant's application for leave to appeal as cross-appellant be held in abeyance pending our decision in the present case. *People v Oscar Moore,* unpublished order of the Supreme Court, dated March 29, 1988 (Docket No. 82069).

construe the phrase "any term of years." In *People v Blythe,* 417 Mich 430; 339 NW2d 399 (1983), the Supreme Court considered whether the phrase "for any term of years" in the armed robbery statute required imposition of a mandatory minimum sentence. In determining that it did not, the Supreme Court concluded that the phrase referred to the maximum sentence to be imposed. 417 Mich at 434. In *Johnson, supra* at 497-498, the Supreme Court wrote:

"The difference between a life sentence and an indeterminate sentence having a minimum and maximum term has been recognized by this Court since our decision in *People v Vitali,* 156 Mich 370; 120 NW 1003 (1909). We observed in *Vitali* that if a life sentence is imposed there can be no minimum term.

"Accordingly, when a statute authorizes the imposition of a sentence of 'life or any term of years' it allows the imposition of a fixed sentence—life— or an indeterminate sentence—any number of years. We observed in *People v Blythe,* 417 Mich 430, 434-435; 339 NW2d 399 (1983), that the Legislature viewed the phrase 'life or any term of years' as descriptive of the maximum sentence only. The sentence concepts 'life' and 'any term of years' are mutually exclusive and a sentencing judge may (in the appropriate case) opt for either but not both."

If "life" and "any term of years" are mutually exclusive concepts, the Court's statement that the latter allows imposition of "any number of years" must mean "any number of years *less than* life."

By definition, a person cannot serve a prison sentence lasting longer than that person's life. A life term is, as a matter of law, a greater penalty than a term of years. *People v McNeal,* 156 Mich App 379, 381; 401 NW2d 650 (1986); *People v Lindsey,* 139 Mich App 412, 415; 362 NW2d 304 (1984). Therefore, it is meaningless for a person to receive a sentence longer than life. The phrase "any term of years" also cannot mean a time equal to life, as it would then be surplusage for the Legislature to have also provided for life sentences in the same statute.

All that remains, then, is a term of years less than life. [*Oscar Moore,* 164 Mich App 389-391. Emphasis in original.]

Thus there are two types of sentences that a judge may impose upon a person convicted of second-degree murder—a sentence of life in prison, or a sentence of a term of years less than life.[13]

### B. THE INDETERMINATE SENTENCING ACT

If the judge chooses to impose a term of years less than life, the sentence must be an indeterminate sentence, as stated in the indeterminate sentencing act:

In all cases where the maximum sentence in the discretion of the court may be imprisonment for life or any number or term of years, the court may impose a sentence for life or may impose a sentence for any term of years. If the sentence imposed by the court is for any term of years, the court shall fix both the minimum and the maximum of that sentence in terms of years or fraction thereof, and sentences so imposed shall be considered indeterminate sentences. The court shall not

[13] In MCL 769.12(1)(a); MSA 28.1084(1)(a), the Legislature has employed the phrase "for life or for a lesser term." The concurring opinion in *People v Robinson,* 172 Mich App 650, 656-657; 432 NW2d 390 (1988), contrasted that phrase with the statutory language considered in *Oscar Moore.* We are unpersuaded by the proposed distinction. The "lesser term" formulation in MCL 769.12; MSA 28.1084 comes from a 1949 amendment of the Code of Criminal Procedure (1949 PA 56). The "any term of years" formulation in the Penal Code predates the 1949 amendment by many years. The 1949 Legislature was surely not thinking of the present issue, since it was not until recent years that any reason existed for a judge to think that a decades-long term of years would cause a defendant to remain in prison longer than would a term of life imprisonment.

We further believe, after noting the usage found in MCL 769.12(1)(b); MSA 28.1084(1)(b) and MCL 769.12(2); MSA 28.1084(2), that MCL 769.12; MSA 28.1084 can fairly be read to employ interchangeably the phrase "a lesser term" and the phrase "any term of years."

impose a sentence in which the maximum penalty is life imprisonment with a minimum for a term of years included in the same sentence. [MCL 769.9(2); MSA 28.1081(2).]

In *People v Tanner,* 387 Mich 683, 689-690; 199 NW2d 202 (1972), this Court found that a sentence is "not indeterminate" if there is not a significant interval between the minimum and the maximum sentence. Tanner had pled guilty of manslaughter and had been sentenced to a term of from 179 to 180 months in prison. This Court found such a sentence not to be lawful, explaining:

> Though the question comes to us couched in terms of abuse of discretion, it clearly involves, and we address ourselves to, the purely legal proposition of whether defendant's sentence is in fact "indeterminate" as contemplated by the provisions of MCL 769.8 and 769.9; MSA 28.1080 and 28.1081.
>
> \* \* \*
>
> Having before us a plethora of cases involving sentences with a period of but 30 days between minimum and maximum, we are constrained to observe that though technically providing some period, though brief, within which the correction authorities may exercise the discretion vested in them by the Legislature, such sentences fail to comply with the clear intent and purpose of the indeterminate sentence act.
>
> \* \* \*
>
> Thus, turning to the precise proposition involved, we are convinced that 30 days is not a sufficient interval of time to guarantee that the corrections authorities will be able to exercise their jurisdiction or judgment with any practicality. The net effect of such severe judicial limitation on indeterminate sentencing is to frustrate the intended effect of indeterminate sentencing.
>
> Convinced as we are, that a sentence with too

short an interval between minimum and maxi-
mum is not indeterminate, we hold that any sen-
tence which provides for a minimum exceeding
two-thirds of the maximum is improper as failing
to comply with the indeterminate sentence act. [*Id.*
at 688, 689-690.]

In the present case, the entire interval between
the defendant's minimum sentence and his maxi-
mum sentence is certain to occur after his death.
Even more clearly than *Tanner,* we therefore have
before us a sentence that is not indeterminate.[14]
The Legislature has authorized only that a person
convicted of second-degree murder be sentenced to
life in prison or to an *indeterminate* term of years.
The Legislature has not authorized that such a
person be, in effect, sentenced to a flat term of
years.

### C. ELIGIBILITY FOR PAROLE

As we have noted, the sentencing judge in this
case clearly stated that the purpose of the 100- to
200-year sentence imposed upon this defendant
was to foreclose the possibility of parole. The
judge's concern was that, if he were to sentence
the defendant to a life term, the defendant would
be eligible for parole after ten years. This eligibil-
ity is stated in the so-called lifer law, MCL
791.234(4); MSA 28.2304(4).[15] The sentencing judge

[14] At least Tanner had a slight *actual* interval between his mini-
mum sentence and his maximum sentence.

[15] A prisoner under sentence for life or for a term of years,
other than prisoners sentenced for life for murder in the first
degree and prisoners sentenced for life or for a minimum term
of imprisonment for a major controlled substance offense, who
has served 10 calendar years of the sentence is subject to the
jurisdiction of the parole board and may be released on parole
by the parole board subject to the following conditions. [MCL
791.234(4); MSA 28.2304(4).]

instead sought to rely upon Proposal B[16] and the accompanying legislation,[17] which provide that a person convicted of an enumerated offense may not be paroled until the person has served the minimum term of imprisonment, less available disciplinary credits.[18]

The Legislature has established a Parole Board[19] and has established procedures and eligibility criteria for granting paroles.[20] With the exception of a person convicted of a major controlled substance offense, any person sentenced to a term of years falls eventually within the jurisdiction of the Parole Board after ten years and may be released on parole in accordance with the statute:

> A prisoner under sentence for life or for a term of years, other than prisoners sentenced for life for murder in the first degree and prisoners sentenced for life or for a minimum term of imprisonment for a major controlled substance offense, who has served 10 calendar years of the sentence is subject to the jurisdiction of the parole board and may be released on parole by the parole board, subject to the following conditions:
>
> * * *
>
> (b) A parole shall not be granted a prisoner so sentenced until after a public hearing held in the manner prescribed for pardons and commutations . . . . Notice of the public hearing shall be given to the sentencing judge or the judge's successor in

[16] Initiated law of 1978, approved at the general election of November 7, 1978.

[17] MCL 791.233b(n), 791.233(1)(c), 791.234(1); MSA 28.2303(3)(n), 28.2303(1)(c), 28.2304(1).

[18] The defendant in this case was within a month of his thirty-fifth birthday when he was sentenced. Accumulating disciplinary credits will not cause his minimum sentence to expire prior to the end of the defendant's life. MCL 800.33(5); MSA 28.1403(5). Cf. *People v Fleming,* 428 Mich 408, 422-427; 410 NW2d 266 (1987).

[19] MCL 791.232; MSA 28.2302.

[20] MCL 791.233 *et seq.;* MSA 28.2303 *et seq.*

office, and parole shall not be granted if the sentencing judge, or the judge's successor in office, files written objections to the granting of the parole within 30 days of receipt of the notice of hearing. The written objections shall be made part of the prisoner's file.

*  *  *

(d) A parole shall not be granted under this subsection in the case of a prisoner who is otherwise prohibited by law from parole consideration. In such cases, the interview procedures [for pardons and commutations] shall be followed. [MCL 791.234(4); MSA 28.2304(4).]

The Legislature has stated that persons convicted of second-degree murder are to be given either a sentence of life in prison or a term of years. For the reasons explained above, a term of years is an indeterminate sentence less than life. The Legislature has provided that persons sentenced to life or to a term of years are eligible for parole consideration in ten years. The people of this state, in enacting Proposal B effectively modified the lifer law to provide that a person sentenced to a term of years for an offense listed in Proposal B would not become eligible for parole until the minimum term was served. Neither the Legislature nor the people, however, have authorized the imposition of a nonparolable term of years. There is no indication that either the Legislature or the people intended such a drastic change in sentencing law.

The Court of Appeals has well stated the law in *Oscar Moore, supra* at 386-387:

The Legislature has mandated life sentences for first-degree murder, MCL ,750.316; MSA 28.548, and certain major controlled substance offenses, MCL 333.7401(2)(a)(i) and 333.7403(2)(a)(i); MSA 14.15(7401)(2)(a)(i) and 14.15(7403)(2)(a)(i). The so-

called "lifer law" excludes persons serving the mandatory life sentences for these crimes from the jurisdiction of the parole board. MCL 791.234(4); MSA 28.2304(4). See also MCL 333.7401(3); MSA 14.15(7401)(3).

We are unable to locate any similar statutory authorization for a sentence of life without parole for an armed robbery conviction, however. While such may be a desirable public policy, it is up to the Legislature to authorize such a sentence. The Legislature is the source of a court's sentencing power. *People v [Roosevelt] Moore,* 51 Mich App 48, 54; 214 NW2d 548 (1974). As we are unable to discern any legislative authorization for the result of defendant's sentence, we must conclude that the sentence given was not valid.

In considering the effect of the lifer law, we believe that the sentencing court has failed to appreciate fully MCL 791.234(4)(b); MSA 28.2304(4)(b), which gives the judge, or the judge's successor in office, a veto over parole. There is a great difference between a prisoner coming under the jurisdiction of the Parole Board, and a prisoner actually receiving a parole. See *People v Hurst (After Remand),* 169 Mich App 160; 425 NW2d 752 (1988). The extreme measure employed in this case (an attempt to impose a nonparolable determinate sentence of a term of years) was simply unnecessary. The sentencing judge (and the judge's successor) have the lawful authority to preclude parole for a person sentenced to life in prison.

### D. SENTENCING DISCRETION

In *People v Coles,* 417 Mich 523, 550; 339 NW2d 440 (1983), we held that an appellate court may "review a trial court's exercise of discretion in sentencing." We went on to say that relief would

be afforded only where "the trial court, in impos-
ing the sentence, abused its discretion to the ex-
tent that it shocks the conscience of the appellate
court."

In the present case, the defendant argues that
the appellate conscience should be shocked by the
length of the defendant's sentence. We are not
shocked, and we do not find the effective length of
this sentence (life imprisonment) to be an abuse of
the trial court's sentencing discretion.[21]

We nevertheless believe that the sentencing
judge abused his discretion in this case. Sentencing
is an event of critical importance. A judge must
enter, after careful consideration, a just order.
Even when emotions understandably and properly
are running high, the judge must discharge faith-
fully the difficult task of exercising sentencing
discretion. The judge must give a sentence that fits
the offense and the offender.

In this case, the sentencing judge has abdicated
his discretion by entering an order that is impossi-
ble to obey. The defendant has committed a terri-
ble crime and must serve a lawful sentence.
Whether sentenced to serve life in prison or a
term of years in prison, the defendant is obliged to
obey the order of the sentencing judge and the
subsequent dictates of the Parole Board. This de-
fendant cannot serve a minimum sentence of 100
years in prison because he will die first. Neither
can he serve a maximum sentence of 200 years in
prison.

This defendant has been sentenced to serve 200
years in prison. It is impossible for him to obey
this order. It is as if he had been ordered to jump
off the ground and not come back down. Such a
sentence serves only to subject an already much

---

[21] We note that, in this case, the recommended sentence range
found in the sentencing guidelines includes life in prison.

maligned system to further ridicule. The judge's outrage is understandable, but the awesome judicial power to enter judgments and orders must be employed with discretion. A judgment or order is not an appropriate case for an emotional or editorial statement. It is not an opportunity for a judge to display for the benefit of the press and the public how "tough on crime" the court might be. On remand, the trial court must enter an order that is possible to obey.

The sentence in this case is an abuse of sentencing discretion in one other regard. The lifer law clearly provides that parole for a person sentenced to life imprisonment is dependent, inter alia, upon the approval of the sentencing judge or the judge's successor. By entering a sentence of from 100 to 200 years in prison, the sentencing judge in this case has effectively sentenced the defendant to life imprisonment. However, the form of this life sentence forecloses not only this judge's own future exercise of discretion, but has foreclosed his successor in office from exercising the discretion that the Legislature clearly has provided in cases where a person convicted of second-degree murder is sentenced to life imprisonment.

As recognized by the Legislature, it is appropriate at any time for the sentencing judge (or the judge's successor) to take the position that the court knows more about the person who has been sentenced to life imprisonment than does the Parole Board, and accordingly to exercise the power of veto over parole. It is an abuse of discretion, however, to enter an order on the day of sentencing that effectively forecloses all future exercise of such Legislatively provided discretion by either the Parole Board or the judge's successor. No one can see the future with such clarity.

## E. SEPARATION OF POWERS

Const 1963, art 3, § 2 provides that the powers of one branch of government are not to be exercised by another:

> The powers of government are divided into three branches; legislative, executive and judicial. No person exercising powers of one branch shall exercise powers properly belonging to another branch except as expressly provided in this constitution.

The head of the Executive Branch of government is the Governor,[22] who has the exclusive power to grant reprieves, commutations, and pardons.[23] The Department of Corrections lies within the Executive Branch,[24] and the Parole Board is placed within the department.[25]

This Court has made it clear that a defendant cannot come to the courts for a parole when the Parole Board is unwilling to act. *People v Fox,* 312 Mich 577; 20 NW2d 732; 168 ALR 703 (1945). The defendant argues that the same principle should obtain where the interests of the parties are reversed—that a trial court should not be able to enter an anticipatory order precluding the parole process.

We find it unnecessary to resolve this constitutional issue. There being no legislative authority for the trial court to impose a nonparolable determinate sentence of a term of years, it is unnecessary for us to determine whether the sentencing judge's order in this case violates the constitution.

[22] Const 1963, art 5, § 1.

[23] Const 1963, art 5, § 14. See *Oakland Co Prosecutor v Dep't of Corrections,* 411 Mich 183, 190-193; 305 NW2d 515 (1981).

[24] Const 1963, art 5, § 2, ¶ 1; MCL 16.375, 791.201; MSA 3.29(275), 28.2271.

[25] MCL 791.232; MSA 28.2302.

### F. CRUEL OR UNUSUAL PUNISHMENT

The defendant argues that the sentence in this case amounts to cruel or unusual punishment, in violation of Const 1963, art 1, § 16. Again, our resolution of the other issues renders it unnecessary to reach that constitutional question.

## IV

Having determined that the trial court has imposed a sentence that does not accord with the sentencing practices established by the Legislature, we must remand this case to the trial court for the imposition of a new sentence. To guide the trial court on remand, we offer additional direction regarding the nature of a lawful sentence in this case.

The defendant informs us that he was thirty-four when he committed this offense and when he was sentenced. He reports that the life expectancy of a person of his age, gender, and race is 34.5 years from the date of sentencing, and that he thus might expect to live until about the year 2020.[26] He would like these facts considered in the imposition of the sentence.

In *Oscar Moore, supra* at 392, the Court of Appeals held that an indeterminate sentence must "be fashioned with consideration of a defendant's life expectancy at the time of sentencing as determined by the trial judge." The dissent, however, warned that if a term of years "cannot equal or exceed a particular defendant's life expectancy, every judge will be an actuary, every attorney will be a physician, and every defendant will be at death's door on sentencing day." *Id.* at 395.

---

[26] The defendant further observes that his minimum sentence will expire in the year 2087 and that, with disciplinary credits, he might get out as early as the year 2068.

For the reasons stated earlier in this opinion, we hold that a "term of years" must be an indeterminate sentence less than life. It must be something that is reasonably possible for a defendant actually to serve.[27]

We decline, however, to adopt either a rigid cap on indeterminate sentences or a rule that a trial court must make a factual determination of a particular defendant's actual life expectancy. Otherwise, the trial court would not only find itself evaluating a defendant's actual state of health, but would find itself reviewing the life expectancies of demographic subgroups, family health histories, and behavioral risks of acquiring certain illnesses, such as cancer and heart disease.

Instead, we simply direct the trial court to fashion a sentence that a defendant in his mid- to late-thirties has a reasonable prospect of actually serving. The effect of the defendant's first sentence being life in prison, the trial court may, on remand, impose a life sentence or an indeterminate term of years.

The defendant requests that we order a resentencing before a different judge. We see no reason to enter such an order in this case.

The defendant's conviction is affirmed. His sentence is vacated, and this case is remanded to the trial court for further proceedings in accordance with this opinion.

LEVIN, BRICKLEY, and ARCHER, JJ., concurred with CAVANAGH, J.

BOYLE, J. (*dissenting*). I write separately because

---

[27] Writing in another era, this Court once said that "[w]here the punishment for an offense is for a term of years, to be fixed by the judge, it should never be made to extend beyond the average period of persons in prison life, which seldom exceeds twenty-five years." *People v Murray,* 72 Mich 10, 17; 40 NW 29 (1888).

I respectfully disagree with the lead opinion's conclusion that the defendant's sentence of 100 to 200 years for second-degree murder was unlawful. The statute provides that second-degree murder is punishable by imprisonment for life or any term of years. The issue is not whether the defendant can serve the sentence, but whether the Court can lawfully impose it. The conclusion follows "with the force and simplicity of Aristotelian syllogism"[1] that the sentence was authorized by the Legislature.

Having decided *People v Johnson*, 421 Mich 494; 364 NW2d 654 (1984), which produced the anomalous result that a life sentence for a Proposal B offense may actually be for less than a term of years, the Court now concludes that a term of years must be less than life. The conclusion is founded on the unarticulated and impermissible premise that an inmate serving a life sentence will probably be paroled. *People v Fleming*, 428 Mich 408; 410 NW2d 266 (1987).

More understandably, the motivating impulse of this opinion may well be a misguided attempt to mitigate the disparity between those serving life terms and those sentenced to lengthy indeterminate sentences. In fact, however, today's result runs counter to the philosophy of sentence reform that "Neither justice nor the appearance of justice is served when similar offenders committing similar offenses receive dissimilar sentences, Michigan Sentencing Guidelines—Statement of Purpose." The court now declares as a matter of law that an older offender must receive a different sentence than a younger offender who has committed a similar offense.

If the majority is offended by the sentence im-

---

[1] *People v Oscar Moore*, 164 Mich App 378, 394; 417 NW2d 508 (1987) (TAHVONEN, J., dissenting).

posed, it ought to forthrightly say so under the
"shock the conscience" standard of *People v Coles,*
417 Mich 523; 339 NW2d 440 (1983).[2] Instead, the
majority shifts responsibility to the Legislature for
the result it wishes to achieve.

The motivating factor for this sentence was the
trial judge's determination of how much time he
thought the defendant should actually serve in
prison. The Legislature has not foreclosed this
option.

I would affirm the decision of the trial court and
the Court of Appeals.[3]

I

The defendant was charged with first-degree

---

[2] *People v Coles* has not led this Court or the Court of Appeals to
find many sentences that "shock the conscience." It appears that trial
courts are, with few exceptions, imposing sentences which are in
context not offensive. If the shock-the-conscience standard has not in
practice accomplished reduction of sentences, it seemingly is because
the template selected does not fit the facts reviewed.

[3] We would also find that the punishment is proportionate to the
crime and does not constitute cruel or unusual punishment.

An examination of all the factors in *Solem v Helm,* 463 US 277; 103
S Ct 3001; 77 L Ed 2d 637 (1983), does not require a finding of
excessive punishment in this case. The punishment in this case, while
admittedly strong, is not disproportionate to the violent and brutal
murder of which the defendant was found guilty. In addition, other
criteria, such as disciplining the wrongdoer, the protection of society,
and deterrence of others from committing like offenses, must be taken
into account. *People v Snow,* 386 Mich 586; 194 NW2d 314 (1972).

Second, contrary to the majority's assertion that "[n]either the
Legislature nor the people . . . have authorized the imposition of a
nonparolable term of years" (*ante,* p 323) or that the Legislature did
not intend a drastic change in sentencing law, we believe this is
precisely what the Legislature intended in enacting "Proposal B."
MCL 791.233b(b); MSA 28.2303(3)(b). As the Legislature itself has
foreclosed parole prior to service of the minimum sentence for "Pro-
posal B" offenders, a sentence within statutory limits cannot be
considered a usurpation of the Parole Board's authority.

Further, there is no infringement by the judiciary upon a legisla-
tive function since the Legislature by statute expressly authorized a
sentence within the range imposed here, that is "any term of years."
Thus, as the imposition of the sentence does not usurp either the
Parole Board's authority or that of the Legislature, the sentence does
not violate the separation of powers doctrine.

murder[4] for stabbing his former girlfriend to death on February 25, 1985. The defendant was also charged with possession of a firearm during the commission of this felony.[5]

Following a jury trial, the defendant was convicted of second-degree murder[6] and of felony-firearm. He was sentenced on October 31, 1985, to a 100- to 200-year prison term for the murder conviction and to a mandatory consecutive two-year sentence for the felony-firearm conviction.

At the trial it was established that the victim was at her home with her fiancé on February 25, 1985. The victim's fiancé testified that at approximately five o'clock a car pulled up in the driveway and that he recognized the person getting out of the car as the defendant. While the defendant's sister remained in the car, the defendant came to the porch, knocked on the door, and called out the victim's name. The defendant asked to speak to the victim, saying that he wanted some pictures and albums that belonged to him and stated that, "I got my sister with me. I'm not going to do anything." At that point the victim opened the door.

The defendant asked the victim to step out on the front porch where she informed him she would pack up the albums immediately and went back into the house. The defendant then returned to the car, and his sister got out of the car and they both came into the house.

When the defendant and his sister entered the home, they remained in the living room, and when the victim came into the room, the defendant indicated he wished to speak to her in the back.

---

[4] MCL 750.316; MSA 28.548.

[5] MCL 750.227b; MSA 28.424(2).

[6] MCL 750.317; MSA 28.549.

The victim's fiancé testified that he said no and that the defendant opened up the briefcase and produced a gun and stated, "Oh yes. I'm going to talk to her." The defendant then jumped off the couch and grabbed the victim's hand and pulled her into the bedroom.

Both the defendant's sister and the victim's fiancé testified that they heard the victim plead, "Please don't kill me." The defendant fired two shots and the victim screamed, "Somebody help me."

Medical documentation revealed that the defendant stabbed the victim seven times, either with a knife or a screwdriver. The evidence technician assigned to the homicide case testified that it appeared the struggle originated in the bedroom, then went through the hallway into the living room area, finally ending in the kitchen. The living room walls, which were eleven feet apart had blood smears and droplets on both sides of the walls, as did the entrance to the bedroom, the bedroom itself, and the hallways.

After a three-day trial the jury found the defendant guilty of second-degree murder and felony-firearm. On October 31, 1985, the day of sentencing, the trial judge reviewed the evidence presented at trial and the information contained in the presentence report. According to the report, the defendant had intended to carry out this plan over a period of time. The defendant had threatened the victim a number of times, and she had tried changing her address on two occasions.

The thirty-four-year-old defendant had a juvenile history that began at age fifteen, three prior felony convictions, and one misdemeanor conviction. The presentence report revealed the circumstance of defendant's prior armed robbery conviction which involved forcible entry into an apart-

ment and a robbery and rape of one of its occupants.

The judge noted:

> We know from the evidence and the testimony that at some given point the deceased must have been physically in a position where she was cowering down. At least the shot that was fired, was fired in the direction that it traveled in a downward fashion, grazing the scalp, I believe, and the hand, and then entering into the dresser drawer. We know that by the trail of blood from that bedroom throughout and into the kitchen that she was fleeing or trying to escape from Mr. Moore. And we know that Mr. Moore did in fact mutilate the deceased by stabbing her some seven times.
>
> I don't know what any appellate court would need by way of recitation other than what I just stated, but a heinous crime of this nature deserves a substantial sentence in order to deter others and as straight out punishment in the hope that Mr. Moore will not be in a position to be in society to do it again in this life. Because the appellate courts of our state have said that in point of fact a life sentence for this sort of crime allows him to be reviewed in ten years, I intend to utilize numbers with the belief that the law requires that the numbers be served before you become eligible for review.

The defendant was sentenced to a 100- to 200-year prison term, and, on appeal, the sentence was affirmed by the Court of Appeals.[7]

## II

### LEGISLATIVE AUTHORITY

The defendant was sentenced pursuant to MCL

---

[7] *People v Timothy Moore,* unpublished opinion per curiam of the Court of Appeals, decided February 19, 1987 (Docket No. 89319).

769.9; MSA 28.1081, the relevant section of which
provides:

> In all cases where the maximum sentence in the
> discretion of the court may be imprisonment *for
> life or any number or term of years,* the court may
> impose a sentence for life or may impose a sen-
> tence for any term of years. If the sentence im-
> posed by the court is for any term of years, the
> court shall fix both the minimum and the maxi-
> mum of that sentence in terms of years or fraction
> thereof, and sentences so imposed shall be consid-
> ered indeterminate sentences. The court shall not
> impose a sentence in which the maximum penalty
> is life imprisonment with a minimum for a term of
> years included in the same sentence. [Emphasis
> added.]

The majority states that "[o]n its face, the stated
penalty for second-degree murder ('life, or any
term of years') indicates that a term of years is a
lesser penalty than life." *Ante,* p 317. The statute
obviously does not mandate on its face that a term
of years must be a term less than life.

It is well established that words should be given
their ordinary meaning:

> It is elementary that the meaning of a statute
> must, in the first instance, be sought in the lan-
> guage in which the act is framed, and if that is
> plain, and if the law is within the constitutional
> authority of the law-making body which passed it,
> the sole function of the courts is to enforce it
> according to its term. [*Caminetti v United States,*
> 242 US 470, 485; 37 S Ct 192; 61 L Ed 442 (1917).]

The language of the statute does not evidence an
intent on the part of the Legislature to confine a
sentence of a term of years to a term less than the
defendant's life expectancy.

The use of the word "any" as an adjective is defined as "one or more without specification . . . in whatever quantity or number, great or small; some." *The Random House College Dictionary* (rev ed, 1975), p 61. The ordinary meaning then of "any," used to describe "term of years," simply indicates the obvious: the Legislature has not limited the judge as to the duration of the term of years.[8] The plain meaning of the phrase "any term of years" is a term of years without limitation as to duration.

The lead opinion asserts that the use of the word "or" inserted between "life" and "any term of years" indicates alternatives that are mutually exclusive,[9] concluding "there are two types of sentences that a judge may impose upon a person convicted of second-degree murder—a sentence of life in prison, or a sentence of a term of years less than life."[10] *Ante,* p 319. Obviously the terms are "mutually exclusive" only in the sense that a court may not both sentence an individual to a term of life and to a term of years. It does not

[8] Although the lead opinion notes the usage found in MCL 769.12(1)(b); MSA 28.1084(1)(b) and MCL 769.12(2); MSA 28.1084(2) has persuaded them that "a lesser term" and the phrase "any term of years" may be read interchangeably, there is no basis for this conclusion. *Ante,* p 319, n 13.

[9] When the term "or" is used, it is presumed to be used in the disjunctive sense and when used in penal statutes seldom indicates anything other than permissible alternative sentences. 21 Am Jur 2d, Criminal Law, § 540, p 897. See also 1A Sands, Sutherland Statutory Construction (4th ed), § 21.14, p 127. The ordinary, plain meaning of an alternative, when used as a noun is "a choice limited to one of two or more possibilities." *Random House Dictionary, supra,* p 40.

[10] *United States v O'Driscoll,* 761 F2d 589, 597-598 (CA 10, 1985), cert den 475 US 1020 (1986). The Tenth Circuit of the Court of Appeals held that a sentence of 300 years in prison with eligibility of parole following 99 years was not outside the statutory limits or illegal or an abuse of the trial court's discretion, nor did it constitute cruel and unusual punishment. *Id.* See also *Passman v Blackburn,* 797 F2d 1335 (CA 5, 1986), cert den 480 US 948 (1987); *United States v Rhodes,* 779 F2d 1019 (CA 4, 1985), cert den 476 US 1182 (1986); *Stevens v Armontrout,* 787 F2d 1262 (CA 8, 1986).

logically follow that a term of years must be less than life; it logically follows that the term of years could be equal to or less than life, and that life could be greater than or equal to a term of years. Thus, the Legislature has in terms authorized any term of years that equals actual life.

While it may be a truism to conclude that the alternatives, "term of years" or "life" present choices that are mutually exclusive in that if one is chosen the other must be rejected, it does not follow that one must be less than the other. *Id.* There is no basis for the conclusion, that the alternative of "life" is a "term of years less than life."

As a basis for this conclusion the lead opinion initially relies on *People v Blythe,* 417 Mich 430; 339 NW2d 399 (1983). *Ante,* p 317, n 10. *Blythe* involved only the question whether "life or any term of years" referred to the mandatory minimum sentence imposed, thus requiring a minimum sentence of at least a year and a day. *Blythe* is inapposite to the case before us.[11] *Id.,* p 433.

Nor does *People v Johnson,* 421 Mich 494, 498; 364 NW2d 654 (1984), support this conclusion. In *Johnson,* this Court discussed the holding of *Blythe, supra,* and observed that the "sentence concepts 'life' and 'any term of years' are mutually exclusive and a sentencing judge may (in the appropriate case) opt for either but not both." This statement was made in the context of observing that if a life sentence was imposed there could be no minimum term of years, concluding then that since "Proposal B" mandated only that a defendant serve the calendar minimum term imposed

---

[11] In a unanimous opinion the Court held: "[T]he language 'for life or for any term of years' refers to the maximum sentence which may be imposed for armed robbery and that this statute does not include a mandatory minimum for the non-aggravated offense." *Blythe, supra,* p 437.

by the court before being eligible for parole, the
lifer law only applied to a determinate life sen-
tence.[12] MCL 791.233b; MSA 28.230(3).

Since *Johnson* held that a life sentence under
Proposal B was subject to the lifer law, a "life"
sentence now carries the potential to require a
shorter sentence than a term of years, the very
anomaly the trial court here observed. However,
despite *Johnson*'s holding that a defendant sen-
tenced to life for a "Proposal B" offense is eligible
for parole after ten years, the lead opinion now
holds that a sentence of life is a greater penalty
than a term of years, implying life is the most
severe penalty that can be imposed.[13] This conclu-
sion focuses on the function of the sentence, and
assumes incorrectly that an inmate serving life
will probably be paroled. There is no support for
the assumption. If a life inmate is not paroled, his
sentence is identical to the defendant's. If a life
inmate is paroled, his sentence is less than Mr.
Moore's. Thus, the assumption is not only logically
flawed, it is based on a speculation as to how the
system will actually operate, a consideration this
Court held was impermissible as a factor in impos-
ing a sentence. *People v Fleming, supra,* p 425.

[12] Then, as now, we agree with the conclusion reached in *People v
Cohens,* 111 Mich App 788; 314 NW2d 756 (1981), that the intent of
the Legislature in enacting Proposal B "was to restructure parole
policies to ensure that defendants would serve their full minimum
term when convicted of one of the listed offenses." *Johnson, supra,* p
500 (dissent of BOYLE, J.) There is no reasonable explanation to
support a conclusion that the Legislature intended to only restructure
parole policies in regard to "Proposal B" offenders sentenced to a term
of years.

[13] See *People v Oscar Moore,* unpublished order of the Supreme
Court, dated March 29, 1988 (Docket No. 82069), held in abeyance
pending decision in the present case.

In *Oscar Moore,* the Court of Appeals built upon the majority
opinion in *Johnson, supra,* noting that "[i]f 'life' and 'any term of
years' are mutually exclusive concepts, the Court's statement that the
latter allows imposition of 'any number of years' must mean 'any
number of years less than life.'" *Ante,* p 318, citing *Oscar Moore,
supra,* p 389.

The Legislature has mandated that

> a parole shall not be granted to a prisoner sentenced for the commission of a crime described in section 33b(a) to (cc) until the prisoner has served the minimum term imposed by the court less an allowance for disciplinary credits . . . . A prisoner described in this subdivision is not eligible for special parole.[14]  [MCL 791.233(1)(c); MSA 28.2303(1)(c).]

If it is true that life is more severe than a term of years, then, despite the mandate of the Legislature that a "Proposal B" offender serve the calendar minimum prior to being considered eligible for parole, defendants sentenced to indeterminate terms must presumably not only be sentenced to a term of years less than life, but it should follow that defendants should be eligible for parole prior to the service of ten years of their calendar minimum term, since a term of years must necessarily be a less severe penalty than life imprisonment.[15]

---

[14] Although "non-Proposal B" offenders are eligible for special parole, release prior to the expiration of their minimum terms of imprisonment whenever the sentencing judge, or his successor gives written approval, MCL 791.233(1)(b); MSA 28.2303(1)(b), "Proposal B" offenders cannot be paroled, even if the sentencing judge approves, prior to serving the calendar minimum. Michigan Department of Corrections Policy Directive 45.14, Habitual Offenders (August, 1988).

[15] As an example of the problems the *Johnson* decision has wrought, see *People v Hurst (After Remand)*, 169 Mich App 160; 425 NW2d 752 (1988). The Court of Appeals initially vacated the defendant's sentence of concurrent terms of prison sentences of forty to eighty years and remanded for resentencing. See *People v Hurst*, 155 Mich App 573; 400 NW2d 685 (1986).

The reason for remand was that if a person given a lengthy indeterminate sentence for a "Proposal B" violation was significantly worse off than an offender sentenced for "life," for purposes of parole consideration, then the sentence imposed would shock the reviewing court's conscience. *Hurst, supra,* 169 Mich App 161. While the Court concluded a sentence for life was the better alternative, the trial judge had resentenced the defendant to concurrent terms of life, thus the Court found the sentence did not shock its conscience. 169 Mich App 168-169.

Finally, despite protestations to the contrary, to impose a limit on the number of years as the lead opinion suggests would require the sentencing court to compute a criminal's life expectancy upon the basis of age, physical health, and family history. If it is the maximum term of years that violates the statute, the maximum term would have to be less than this computed life expectancy and then under *People v Tanner,* 387 Mich 683; 199 NW2d 202 (1972); the court would have to perform the final computation, the one-third/two-thirds formulation, which would become the minimum sentence.[16] This procedure is also inconsistent with the guidelines which recommend a minimum sentence up to life in prison. *People v Broden,* 428 Mich 343, 355; 408 NW2d 789 (1987). This procedure would essentially require every court to function as an actuary:

> For example [take] a person who has the foresight to commit a murder at the age of 45 years old and due to his genetic history, his current physical health and diet, has a projected life span of 55 years. The maximum term of years then would have to be less than 10 years. The appropriate computation under *Tanner* would then result in a minimum term of six years. This would have the net result of eliminating any discretion from the sentencing judge if "any term of years" is determined to be less than life. Indeed, murder committed by a defendant who has outlived his individual life expectancy would not be punishable by a term of years at all. Life would be the only permissible sentence. This eliminates a portion of the penalty provision established by the Legislature and would have the impermissible result of eliminating the trial court's exercise of discretion which is required by statute.

---

[16] The sentencing guidelines do not include age as a variable. Nonetheless, the effect of today's decision is to mandate that age be considered when it benefits a defendant.

The above example assumes the opinion's holding refers to the maximum term. On the other hand, if it is the minimum term of the sentence that is of significance to the majority the trial court must also presumably use actuarial tables to impose a minimum no greater than two-thirds of the defendant's life expectancy.[17] Whether the term addressed by the majority is the minimum or the maximum,[18] the observation is well taken that the inevitable direction of the opinion is the impo-

---

[17] Regardless of a defendant's prior criminal record and the serious nature of the crime, this Court would be forced to review every defendant's sentence if we were to adopt the interpretation proposed by the lead opinion, that is, that a sentence for a term of years may not exceed a defendant's life expectancy.

While the Court granted leave in *People v Moore* and *People v Milbourn* to review the legality of sentences of imprisonment for very long terms of years, there are cases being held in abeyance for *Moore* in which defendants have been sentenced to terms of twenty to fifty, thirty to fifty, and twenty-five to fifty years, on the basis that, for example, because of the defendant's age at the time of sentencing or the fact that the defendant has a history of heart problems, these sentences which exceed the defendant's life expectancy are unlawful.

See *People v Golidy* (Docket No. 83516) (the defendant had a long history of involvement in illegal gambling and drug dealing, was sentenced twenty to fifty years for delivery of a controlled substance and of being an habitual offender and was fifty-three when sentenced); *People v Walker* (Docket No. 84881) (the defendant, sentenced to thirty to fifty years for a bank robbery, twenty-five to fifty years for assault and the mandatory term for felony-firearm, challenged his sentence because he was almost forty-four at the time of sentencing and has a heart problem); *People v Wilkins* (Docket No. 82666) (the defendant, convicted of assault with intent to murder and felony-firearm, was sentenced to seventy-five to one hundred fifty years. This defendant, at thirty-one years of age, had been convicted of ten felonies and prior to that had ten or eleven juvenile contacts); *People v Lowman* (Docket No. 83289) (the defendant who raped the victim at knifepoint and had a lengthy criminal record, the last conviction being for assault with intent to rob while armed, was sentenced to a fifty- to one hundred-year prison term).

[18] The discussion in the lead opinion regarding the Parole Board's jurisdiction once the defendant has served the minimum term of his sentence indicates it is the minimum term which is of significance to the holding. *Ante,* pp 322-324. The dicta in *Johnson, supra,* still requires a defendant to serve the minimum term of his sentence. It ought to follow then that the significant portion of the sentence is the minimum term and not the maximum. As long as the minimum term imposed is less than the defendant's life expectancy, the defendant

sition of determinate life sentences for the majority of serious offenders and the elimination of the indeterminate portion of the penalty provision established by the Legislature.

This Court recognized in its dicta in *Johnson* that the lifer law does not apply to a defendant sentenced to a term of years for a Proposal B offense. The purpose of Proposal B is to prevent early release. The ultimate illogic in the majority result is to conclude that it is contrary to the legislative will to impose a term of years that precludes parole when Proposal B was enacted for the purpose of precluding early parole. If the Legislature wished to restrict that authority it could modify Proposal B, increase disciplinary credits, or modify the "lifer law." To conclude that given terms of years are "unnecessary" is simply to frustrate the very authority given to the sentencing judge by the Legislature.

Therefore, because the language of the statute *is* unambiguous, no judicial interpretation is necessary. We would find the sentence of 100 to 200 years within the statutory limits which authorize the sentencing judge to impose a sentence of "life" or "any term of years."

### III

#### ABUSE OF DISCRETION

Under Michigan law the appellate court may

---

could serve the minimum term and there would be some time within which the Parole Board could exercise jurisdiction. The disparity observed in *Johnson* will still exist because Proposal B requires service of the minimum sentence and the lifer law has not been amended to eliminate the parole eligibility disparity between life and an indeterminate sentence. Note, *The effect of Proposal B on the lifer law,* 65 U of D L R 725, 748 (1988).

review a trial court's exercise of discretion in sentencing and will provide relief for the defendant only in those instances in which the sentence "shocks the conscience of the appellate court." *People v Coles, supra,* 550. We agree with the conclusion reached in the lead opinion that as the reviewing court we are not shocked, and thus do not find the effective length of this sentence to be an abuse of the trial court's sentencing discretion. *Ante,* p 325.

However, we disagree with the conclusions also reached by the lead opinion that the sentencing judge abused his discretion by entering an order that is impossible for the defendant to obey, and one which effectively foreclosed his, or his successor's, future exercise of discretion in regard to granting approval of parole prior to the service of the defendant's minimum calendar term. *Ante,* pp 325–326. It cannot be an abuse of discretion to do what the Legislature has authorized, nor can it be an abuse of discretion to foreclose the discretion of the Parole Board when the Legislature has authorized foreclosure by mandating that a defendant serve the calendar minimum term of the sentence.

To repeat, the issue is not whether a defendant can actually serve the sentence imposed by the trial court, but rather whether the court has the lawful authority to impose the sentence. The sentencing judge stated the sentence imposed on defendant Moore was designed so that the defendant would not be released from prison during his natural life. The judge noted that "[b]ecause the appellate courts of our state have said that in point of fact a life sentence for this sort of crime allows [the defendant] to be reviewed in ten years, I intend to utilize numbers with the belief that the

law requires that the numbers be served before you become eligible for review."[19]

Under *People v Coles, supra,* a sentence must bear a reasonable relationship to a legitimate sentencing goal.[20] The trial judge stated that the purpose of the 100- to 200-year sentence was to foreclose parole and thus provided a rationale for the sentence which bore a reasonable relationship to the shocking, heinous crime committed by the defendant.[21] The sentence does not constitute an abuse of the trial court's discretion because the legislative referendum authorized avoidance of the lifer law.[22]

The lead opinion's assertion that the action of the trial judge precluded the judge or his successor from the opportunity to deny or approve early release is simply incorrect. The Legislature itself has precluded the court's discretion by enacting legislation which declares that "Proposal B" offenders are ineligible for special parole.[23] In this case, the defendant was convicted of second-degree murder, a "Proposal B" offense. Thus the defendant could not be released prior to serving the

---

[19] Although a defendant must serve the calendar minimum term minus disciplinary credits when sentenced to an indeterminate sentence, if sentenced to life imprisonment, the defendant may be eligible for parole after ten years. MCL 791.234(4); MSA 28.2304(4). See *People v Johnson, supra.*

[20] The imposition of a severe sentence within legal limits is not error, and insofar as standard sentencing is concerned, not every offense in a like category calls for identical punishment. *Williams v Oklahoma,* 358 US 576; 79 S Ct 421; 3 L Ed 2d 516 (1959).

[21] The decision was affirmed by the Court of Appeals. The panel noted that the trial court correctly considered the shocking nature of the crime, deterrence, and the needs to protect society and punish the defendant.

[22] See, for example, *People v Martinez,* 147 Mich App 94; 382 NW2d 741 (1985).

[23] As previously noted, a defendant sentenced to an indeterminate sentence for a "Proposal B" offense must serve the calendar minimum term minus disciplinary credits and is not eligible for special parole. MCL 791.233(1)(c); MSA 28.2303(1)(c).

calendar minimum, even with the sentencing judge's approval. MCL 791.233b(n); MSA 28.2303(3)(n).

It cannot be an abuse of discretion to foreclose a sentencing judge's discretion in a situation, such as here, where the Legislature effectively foreclosed both the judiciary's and the Parole Board's discretion regarding release prior to serving a minimum term. Thus, there is no basis for the lead opinion's conclusion that the sentence of 100 to 200 years constituted an abuse of the trial court's discretion.

### CONCLUSION

To be clear, while all might not agree with this sentence, the sentence was within the authority legislatively granted to the trial court. There is no support for the construction of the statute offered in the lead opinion. Accordingly, I would affirm the opinion below.

RILEY, C.J., and GRIFFIN, J., concurred with BOYLE, J.