*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
August 12, 2025
1:56 PM

Plaintiff-Appellee,

v

No. 356714
Saginaw Circuit Court
LC No. 91-004624-FC

ADAM FERGUSON, also known as ADAM
FERGERSON,

Defendant-Appellant.

Before: YATES, P.J., and YOUNG and WALLACE, JJ.

YATES, P.J. (*concurring*).

Defendant was sentenced for a wide variety of crimes he committed in January 1991, when he was 17 years old. Defendant's concurrent sentences for a collection of violent crimes were not especially lengthy, but his convictions for quotidian drug offenses resulted in consecutive terms of imprisonment that extended his earliest release date from prison to October 8, 2047. Because that aggregate term of imprisonment cannot withstand a challenge under the constitutional prohibition of "cruel or unusual punishment" in Const 1963, art 1, § 16, insofar as it is not "something that is reasonably possible for . . . defendant actually to serve," *People v Moore*, 432 Mich 311, 329; 439 NW2d 684 (1989), I join my colleagues in affording relief to defendant. But I write separately to describe the perils of invoking the proscription of "cruel or unusual punishment" to set universally applicable limits on indeterminate sentences, which under established precedent must be tailored in each case to the offender and the offense. See, e.g., *id*.

## I. LEGAL BACKGROUND

In most felony cases in Michigan, if incarceration is ordered, the sentencing court imposes either a jail term or an indeterminate prison sentence. To establish the lower and upper boundaries of an indeterminate prison sentence, the sentencing court must consider sentencing guidelines that our Legislature has prescribed in setting the minimum prison term, and then mechanically set the maximum term of imprisonment just as our Legislature has defined it. The minimum prison term selected by the sentencing court determines the defendant's earliest release date from prison. Thus, the sentencing court has a great deal of latitude in choosing the minimum prison term, and thereby

-1-

dictating the defendant's earliest release date, but virtually no discretion in setting the maximum term of imprisonment.

A sentencing court does not have unfettered discretion in choosing a minimum prison term. First, a sentencing court must be informed by a correctly scored sentencing guidelines range, and an incorrect scoring decision on a sentencing guidelines variable ordinarily warrants resentencing. *People v Francisco*, 474 Mich 82, 89-91; 711 NW2d 44 (2006). Second, its sentence must satisfy the "principle of proportionality," which mandates consideration of both the nature of the offense and the background of the offender. See *People v Steanhouse*, 500 Mich 453, 472-473; 902 NW2d 327 (2017). Third, because of a constitutional imperative, a sentencing court cannot impose a term of imprisonment that constitutes "cruel or unusual punishment." See Const 1963, art 1, § 16.

The universe of sentences characterized as "cruel or unusual punishment" expanded in the wake of the United States Supreme Court's decision in *Miller v Alabama*, 567 US 460; 132 S Ct 2455; 183 L Ed 2d 407 (2012), which held that the imposition of a mandatory prison term of life without parole on a juvenile "violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.' " *Id*. at 465. Ten years after the ruling in *Miller*, our Supreme Court combined that holding with an analysis of the Michigan Constitution's ban on "cruel or unusual punishment" and its own opinion in *People v Bullock*, 440 Mich 15; 485 NW2d 866 (1992),[1] to hold that a term of imprisonment of life *with* the possibility of parole for second-degree murder imposed on a juvenile constitutes "cruel or unusual punishment" in contravention of Const 1963, art 1, § 16. See *People v Stovall*, 510 Mich 301, 307-308; 987 NW2d 85 (2022). Significantly, however, those cases did not involve indeterminate sentences like the one at issue in the instant case.

Relying on the ruling in *Stovall*, this Court recently decided that an indeterminate sentence of 50 to 75 years' imprisonment for second-degree murder imposed upon a 16-year-old defendant was "invalid for two related but distinct reasons: it violates the Michigan Constitution's prohibition of cruel or unusual punishment, and it is also disproportionate given the sentencing court's failure to consider [the defendant]'s youth and its attendant characteristics as mitigating factors." *People v Eads*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 357332); slip op at 1. But in contrast, this Court subsequently upheld concurrent prison terms of 60 to 150 years on two counts of second-degree murder. *People v Nard*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 369185); slip op at 1. The results in those two cases illustrate how fact-specific, and how truly inconsistent, the outcomes can be if this Court routinely scrutinizes indeterminate sentences under the constitutional common law flowing from the proscription of "cruel or unusual punishment" in Const 1963, art 1, § 16. But in a state like Michigan that follows the principle of proportionality, which favors individualized consideration of the offense and the offender as the driving forces in sentencing, these inconsistent outcomes are not only inevitable, but also unlikely to ever be settled by any single appellate ruling addressing "cruel or unusual punishment."

---

[1] In *Bullock*, our Supreme Court declared unconstitutional a mandatory prison term of life without parole for "mere possession of cocaine," *Bullock*, 440 Mich at 37, regardless of the offender's age.

## II. CONSTITUTIONAL CONCERNS

Two lines of precedent define the contours of "cruel or unusual punishment" in sentencing. First, under *Miller*, 567 US 460, and its progeny, substantial process is required before a relatively harsh sentence, such as life without parole, may be imposed on a defendant. But if that process is provided, the relatively harsh sentence may be imposed, notwithstanding the proscription of "cruel or unusual punishment" under Const 1963, art 1, § 16. See, e.g., *People v Poole*, ___ Mich ___, ___; ___ NW3d ___ 2025 (Docket No. 166813); slip op at 17 ("vacating defendant's sentence of mandatory life without the possibility of parole and remanding for further proceedings consistent with MCL 769.25a"). Indeed, both *Miller*, 567 US at 480, and MCL 769.25 dictate that a sentence of life without the possibility of parole may be imposed even on a young first-degree murderer in appropriate circumstances if sufficient process is provided at the sentencing hearing.

Second, in *People v Parks*, 510 Mich 225, 268; 987 NW2d 161 (2022), our Supreme Court invoked "the principle of proportionality derived from the Michigan Constitution" that can render a sentence "unconstitutionally cruel punishment under Const 1963, art 1, § 16." That principle of proportionality arising from the Michigan Constitution places a substantive limitation on the power of trial courts to impose prison terms so severe that they rise to the level of "cruel punishment" in violation of Const 1963, art 1, § 16. Decades ago, our Supreme Court stated that that substantive limitation requires "that a 'term of years' must be an indeterminate sentence less than life. It must be something that is reasonably possible for a defendant to actually serve." *Moore*, 432 Mich at 329. But, crucially, our Supreme Court "decline[d] . . . to adopt either a rigid cap on indeterminate sentences or a rule that a court must make a factual determination of a particular defendant's actual life expectancy." *Id*. Instead, the Court "simply direct[ed] the trial court to fashion a sentence that a defendant in his mid- to late-thirties has a reasonable prospect of actually serving." *Id*.

That brings me back to *Eads* and *Nard*. *Eads* seems to do exactly what our Supreme Court declined to do, i.e., "adopt . . . a rigid cap on indeterminate sentences . . . ." See *Moore*, 432 Mich at 329. *Eads* categorically stated that "the United States Sentencing Commission . . . defines a life sentence as a period of incarceration of 470 month (approximately 39 years) or more . . . ." *Eads*, ___ Mich App at ___; slip op at 9. Then *Eads* delved into the particulars of life expectancy in the prison system. *Id*. Finally, *Eads* relied on a categorical standard to conclude that an indeterminate prison sentence of 50 to 75 years is necessarily "cruel or unusual punishment" forbidden by Const 1963, art 1, § 16. All of that, in my view, flies in the face of what our Supreme Court counselled in *Moore*, 432 Mich at 329, when assessing the constitutionality of an indeterminate sentence.

More significantly, the categorical approach to indeterminate sentences that *Eads* adopted is antithetical to "the principle of proportionality derived from the Michigan Constitution" in Const 1963, art 1, § 16. See *Parks*, 510 Mich at 268. As our Supreme Court recently said, "Const 1963, art 1, § 16 requires that criminal sentences be proportional to the circumstances of the offense and of the offender such that excessive imprisonment is prohibited." *People v Taylor*, ___ Mich ___, ___; ___ NW3d ___ (2025) (Docket Nos. 166428 and 166654); slip op at 8. To remain faithful to that constitutional principle of proportionality, a sentencing court (or any other panel of this Court) ought not reflexively follow any categorical rule laid down in *Eads* or any other published opinion of this Court. The principle of proportionality rests on the presumption that no two offenders (and no two offenses) are similarly situated for sentencing purposes. For that reason, I believe that *Eads* and *Nard* can coexist as published opinions, and neither opinion binds us in the instant case.

### III. CONCLUSION

Our task under binding Supreme Court authority is to assess whether the sentences imposed upon defendant satisfy "the principle of proportionality derived from the Michigan Constitution," *Parks*, 510 Mich at 268, and, if defendant's sentences do not satisfy that standard, to "simply direct the trial court to fashion a sentence that" defendant "has a reasonable prospect of actually serving." *Moore*, 432 Mich at 329. Under this approach, it is emphatically neither the province nor the duty of this Court to say what the sentence is, to borrow a phrase from *Marbury v Madison*, 5 US (1 Cranch) 137, 177; 2 L Ed 60 (1803). Because I agree with my colleagues that the sentences in this case do not satisfy the principle of proportionality, I join my colleagues in vacating those sentences and remanding the case for a new sentencing hearing. But we must leave it to the sound judgment of the trial court to decide what the proportionate sentences are for defendant.[2]

/s/ Christopher P. Yates

---

[2] We judges on the appellate courts are relatively ill-equipped and poorly positioned to determine what constitutes a proportionate sentence for an offender. We do not get to observe the trial or the plea hearing. We take no part in sentencing, so we have no idea whether the defendant responded to the victim-impact statements with tears or sneers. We know nothing about what may have been discussed among the sentencing judge and opposing counsel in chambers prior to the sentencing hearing. As a result, we act responsibly when we leave sentencing to the trial courts.