*In re* PAROLE OF SCHOLTZ

Docket No. 191528. Submitted August 6, 1997, at Lansing. Decided August 11, 1998, at 9:00 A.M.

James K. Scholtz filed an application in the Sanilac Circuit Court for leave to appeal a decision by the Parole Board to deny him parole although he had received a score under the parole guidelines that indicated a high probability of parole. The court, Donald A. Teeple, J., dismissed the application, ruling that the Parole Board provided substantial and compelling reasons in support of its decision and did not abuse its discretion. Scholtz appealed to the Court of Appeals by leave granted.

The Court of Appeals *held*:

1. The Parole Board failed to comply with the requirement in MCL 791.233e(6); MSA 28.2303(6)(6) that it provide substantial and compelling reasons in writing when denying parole to a prisoner who has a high probability of parole as determined under the parole guidelines. The reasons that were given, "Nature of Crime(s)" and "Insufficient Program/Therapy Progress," were conclusory and inadequate and therefore not substantial and compelling.

2. The Parole Board failed to comply with the requirement in MCL 791.235(12); MSA 28.2305(12) that it provide a prisoner with a written explanation of the reason for a final determination not to release the prisoner. The explanation must contain sufficient detail to facilitate review by the Court of Appeals for possible abuse of discretion by the Parole Board and must communicate to the prisoner the rationale for the decision so that the prisoner may take steps to increase the chances for parole.

Circuit court order vacated; case remanded to Parole Board for further proceedings.

1. PAROLE — PAROLE BOARD — DEPARTURES FROM PAROLE GUIDELINES — SUBSTANTIAL AND COMPELLING REASONS.

The Parole Board must provide in writing substantial and compelling reasons for departing from the parole guidelines by denying parole to a prisoner who has a high probability of parole as determined under the parole guidelines or by granting parole to a prisoner who

has a low probability of parole as determined under the parole guidelines (MCL 791.233e[6]; MSA 28.2303[6][6]).

2. PAROLE — PAROLE BOARD — WRITTEN EXPLANATION FOR DENIALS OF PAROLE.
The Parole Board, when making a final determination not to release a prisoner, must provide the prisoner with a written explanation of the reason for the denial; the explanation must contain sufficient detail to facilitate review by the Court of Appeals for possible abuse of discretion by the Parole Board and must communicate to the prisoner the rationale for the decision so that the prisoner may take steps to increase the chances of parole (MCL 791.235[12]; MSA 28.2305[12]).

*Neal Bush,* for James K. Scholtz.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Charles C. Schettler, Jr.,* Assistant Attorney General, for the Parole Board.

Before: CORRIGAN, C.J., and MARKEY and MARKMAN, JJ.

PER CURIAM. Appellant appeals by leave the circuit court order denying his application for leave to appeal from the Parole Board's decision to deny him parole. We vacate the circuit court's order and remand to the Parole Board for further proceedings consistent with this opinion.

I

In exchange for the dismissal of other charges, appellant pleaded guilty of one count of second-degree criminal sexual conduct (CSC II), MCL 750.520c(1)(a); MSA 28.788(3)(1)(a), and two counts of attempted CSC II, MCL 750.92; MSA 28.287, for molesting his business partner's three minor daughters. On September 30, 1991, the trial court sentenced appellant to concurrent terms of imprisonment of

four to fifteen years for the CSC II conviction and three to five years for each conviction of attempted CSC II.

Appellant became eligible for parole in 1995. In June 1995, the Parole Board evaluated him under the parole guidelines. Appellant received a score of "+8," indicating a "high probability" of parole. The guidelines scoresheet is not signed by the Parole Board members and the sections labeled "rationale for deviation," "parole guideline decision," and "final panel decision" are blank. A July 1995 "Parole Board Screening Form," however, contains the following remarks about appellant: "Of concern is the number of victims and the less than positive SOT term report. The report should be discussed w/ [appellant] in detail. Need impressions."[1] Located at the bottom of the form is the remark "Not impressed!"

One of the Parole Board members interviewed appellant on August 10, 1995. He subsequently noted on a "Parole Board Hearing comments" form that he "[g]ave [appellant] 3 chances to tell [him] he can't be around kids—didn[']t bite. Gave him chances to express victim empathy—didn't. Has no firm plans— none for relapse prevention, none for employment, future plans," and "[p]syche eval is right: superficial, unprepared. Has 6 yr old daughter at home— [p]lacement inappropriate!" Printed at the bottom of the form is the notation "Inadequate. No[t] ready."

On the Parole Board Decision Sheet, dated August 11, 1995, under the caption "Reasons for Continuance," a board member checked "Nature of Crime(s)" and "Insufficient Program/Therapy Progress." Under

---

[1] "SOT" is presumably an abbreviation for the phrase "sex offender therapy."

the heading "Recommendations," the board member checked "Clear Conduct," "Positive Work/School Reports," and "Other." He inserted the additional words "SOT Aftercare" in the space next to the word "Other." In the "Comments" section of the document, the board member wrote: "Improve Relapse Prevention Plan, placement plans." All three members of the Parole Board signed or initialed the form. Appellant did not receive a copy of the decision sheet.

The Parole Board formally denied appellant parole on August 14, 1995. In the document captioned "Notice of Action," the board noted that appellant was "continued." Next to the heading "Action Description," the form states "Risk to Community." Under the heading "Reasons for Continuance," the form states "Nature of Crime" and "Insufficient Progress." The words "Clear Conduct," "Positive Work/School Reports," and "Other" are printed in the "Recommendations" section of the form. In the "Comments" section, the form states: "Other: SOT Aftercare." The Notice of Action is the only document provided to an inmate to inform him of the reasons for denying him parole.[2]

Appellant filed an application in the circuit court for leave to appeal the Parole Board's decision under MCL 791.234(7); MSA 28.2304(7). The court dismissed the application, reasoning as follows:

---

[2] On questioning from the bench, counsel for the Parole Board informed this Court that although the board formerly provided this "very sketchy" Notice of Action to prisoners, the form "has been replaced by a new computerized Notice of Action that sets forth much more extensive grounds for the denial of parole." We express no opinion regarding the new form because that question is not before us.

I believe that the Parole Board did provide substantial and compelling reasons in support of its decision, and they're the ones that have the discretion, not me. . . . Why (sic) I find that the language may be somewhat abbreviated but the language that they use adequately articulates the reason for denying parole and that was something that was in their discretion to do, and it is not within my discretion to change unless I find an abuse of discretion. Therefore, I will deny the application for leave to appeal on its merits.

II

Appellant argues that the Parole Board failed to provide substantial and compelling reasons in writing for denying him parole under MCL 791.233e(6); MSA 28.2303(6)(6) when his guidelines score demonstrated a high probability of parole. We agree.[3]

This Court recently described the parole procedure, including judicial review of the Parole Board's decision, in *In re Parole of Johnson*, 219 Mich App 595, 596-599; 556 NW2d 899 (1996):

The Legislature has entrusted the decision whether to grant or deny parole to the Parole Board. MCL 791.234(7); MSA 28.2304(7). Traditionally, the board's discretion has been deemed to be broad, though still subject to judicial review. *Lane v Parole Bd*, 14 Mich App 557, 562-563; 165 NW2d 841 (1968), rev'd on other grounds 383 Mich 50; 173 NW2d 209 (1970); *Ex parte McBride*, 68 F Supp 139, 140 (WD Mich, 1946). While the Parole Board continues to enjoy broad discretion in carrying out its legislatively prescribed function, the Legislature's recent enactments have

---

[3] We recognize that issues involving appellant's 1995 parole review may be moot because the Parole Board may have considered whether to parole appellant in 1996 and 1997. We would, however, review the issues presented even if moot because they are of public significance and are likely to recur in the future yet evade appellate review. *People v Cannon*, 206 Mich App 653, 654; 522 NW2d 716 (1994).

circumscribed this discretion to some extent. See MCL 791.233e; MSA 28.2303(6) (1992 legislation creating a procedure for establishing guidelines for the board to follow in making parole decisions). In addition to limiting the board's discretion, the Legislature clarified the right of prisoners, crime victims, and prosecutors to appeal the Parole Board's decisions to the circuit court. MCL 791.234(7); MSA 28.2304(7); *Wayne Co Prosecutor v Parole Bd*, 210 Mich App 148, 152; 532 NW2d 899 (1995) (holding that the 1992 amendment to specify victim and prosecutor appeals was not a change in the law; rather, it clarified the previously existing right to maintain such an appeal).

\*      \*      \*

In the first case to reach this Court since the statutory amendment, we concluded that review should be under an abuse of discretion standard. *Wayne Co Prosecutor, supra* at 153. See also MCR 7.104(D)(5)(b). Such a determination is to be made "in light of the record and of the statutory requirements" that limit the board's discretion. *Wayne Co Prosecutor, supra* at 154. Additionally, we recognized that, although the board is given discretion in parole decisions, that discretion is not unfettered. *Id.* at 153. Rather, it is limited by several statutory guidelines. *Id.*

\*      \*      \*

While the statutes provide the framework, the Legislature also enacted provisions to create "parole guidelines," intended to "govern the exercise of the parole board's discretion . . . as to the release of prisoners on parole . . . ." MCL 791.233e(1); MSA 28.2303(6)(1). The parole guidelines are now found at 1996 MR 1, R 791.7716. The guidelines were filed and became effective after the parole decision was made in the instant case. However, as mandated by statute, the Parole Board was clearly utilizing the guidelines in their proposed form to evaluate defendant's eligibility. MCL 791.233e(5); MSA 28.2303(6)(5). Therefore, we review the Parole Board's exercise of discretion as it is governed by the parole guidelines.

The parole guidelines are an attempt to quantify the applicable factors that should be considered in a parole decision. Those factors are set forth by statute and are further refined by administrative rule. MCL 791.233e; MSA 28.2303(6); 1996 MR 1, R 791.7715. By quantifying the factors, the Legislature plainly intended to inject more objectivity and uniformity into the process in order to minimize recidivism and decisions based on improper considerations such as race. MCL 791.233e; MSA 28.2303(6); 1996 MR 1, R 791.7716. Therefore, each potential parolee is evaluated under the guidelines and scored with respect to each guidelines category. These scores are then aggregated to determine a total guidelines score. That score is then used to fix a probability of parole determination for each individual on the basis of a guidelines schedule. Prisoners are categorized under the guidelines as having a high, average, or low probability of parole.[4]

MCL 791.233e(6); MSA 28.2303(6)(6) governs deviations from the guidelines' recommendation:

The parole board may depart from the parole guideline by denying parole to a prisoner who has a high probability of parole as determined under the parole guidelines or by granting parole to a prisoner who has a low probability of parole as determined under the parole guidelines. A departure under this subsection shall be for substantial and compelling reasons stated in writing. The parole board shall not

---

[4] Under R 791.7716(3), a prisoner's guidelines score is derived from a combination of the length of incarceration and several factors, including the nature of the offense (as well as aggravating and mitigating circumstances), the prisoner's prior record, the prisoner's conduct during incarceration, whether the prisoner is an assault risk, the prisoner's age, the prisoner's performance in programs, and the prisoner's mental health. Each of these factors, in turn, involves the analysis of numerous subfactors set forth in the administrative rules. Rule 791.7716(5) mirrors MCL 791.233e(6); MSA 28.2303(6)(6) by providing that "[t]he parole board may depart from the parole guideline by not granting parole to a prisoner who has a high probability of parole or by granting parole to a prisoner who has a low probability of parole. A departure shall be for substantial and compelling reasons stated in writing."

use a prisoner's gender, race, ethnicity, alienage, national origin, or religion to depart from the recommended parole guideline.

Under *Johnson, supra* at 599, the Parole Board must provide substantial and compelling reasons for departing from the guidelines' recommendation *even where* the guidelines existed only in proposed form at the time of the decision.[5]

We conclude that the Parole Board failed to provide substantial and compelling reasons in writing for departing from the guidelines' recommendation in this case. The Parole Board's reasons for denying appellant parole contained in the Parole Board Decision Sheet were "Nature of Crime(s)" and "Insufficient Program/Therapy Progress." These reasons were inadequate to support the deviation from the guidelines' recommendation.

In *Johnson, supra* at 600-601, this Court affirmed the circuit court decision vacating the Parole Board's grant of parole to a prisoner who had a low probability of parole under the guidelines. This Court observed that the decision to parole "was not based on any objective criteria, but rather was based on the subjective feelings of the board member." *Id.* at 601. The objective criteria revealed that less than two months before the parole decision the prisoner (1)

---

[5] The administrative rules, 1996 MR 1, R 791.7701 *et seq.*, became effective on January 25, 1996, five months after the parole decision in this case. Under MCL 791.233e(5); MSA 28.2303(6)(5), the Parole Board need only have considered, not followed, the proposed guidelines used to evaluate appellant. Given that the Parole Board was not required to follow the proposed guidelines, we question this Court's holding in *Johnson, supra,* that this Court will review parole decisions under the proposed guidelines in the same manner as those under the guidelines adopted by administrative rule. Nevertheless, we must follow *Johnson.* MCR 7.215(H)(1).

demonstrated no significant positive factors weighing in favor of parole, (2) had received numerous prison misconduct citations, many involving violent and assaultive behavior, and (3) exhibited an inability to complete recommended programs. *Id.* at 600-601. This Court concluded that "this [was] precisely the situation the Legislature intended to eliminate by imposing guidelines on the exercise of the Parole Board's discretion." *Id.* at 601.

Here, we conclude that the Parole Board failed to comply with the requirement that it state adequate reasons for its decision in writing. The brief reasons provided in the Parole Board Decision Sheet do not constitute substantial and compelling reasons for denying parole, but, rather, are merely conclusory statements supporting the rejection of the parole guidelines' recommendation. Although the document entitled "Parole Board Hearing Comments" contains more specific statements, only one board member signed the document and it does not purport to provide a statement of the Parole Board's reasons for denying parole. Accordingly, we conclude that the Parole Board failed to comply with MCL 791.233e(6); MSA 28.2303(6)(6) because it did not state substantial and compelling reasons in writing to support its denial of parole.

III

Appellant next argues that the Parole Board failed to comply with the written explanation requirement of MCL 791.235(12); MSA 28.2305(12). Once again, we agree.

MCL 791.235(12); MSA 28.2305(12) provides:

When the parole board makes a final determination not to release a prisoner, the prisoner shall be provided with a written explanation of the reason for denial and, if appropriate, specific recommendations for corrective action the prisoner may take to facilitate release.

The statute does not establish the degree of specificity with which the Parole Board must articulate its reasons. The explanation must, however, contain sufficient detail to facilitate this Court's review of the parole decision for an abuse of discretion. MCL 791.234(7); MSA 28.2304(7); *Wayne Co Prosecutor v Parole Bd*, 210 Mich App 148, 153; 532 NW2d 899 (1995). It must also communicate to the prisoner the rationale for the decision so that the prisoner may take steps to increase his chances for parole. In the related context of decisions to deny parole to a parolable lifers, this Court recently described such a written explanation as one "meaningfully detailing [the Parole Board's] finding and conclusions regarding its decision to deny parole."[6] *In re Parole of Glover*, 226 Mich App 655, 676; 575 NW2d 772 (1997), lv gtd 458 Mich 866 (1998). We do not imply that the Parole Board must engage in opinion writing; it need not. The Parole Board must merely articulate sufficient reasons to inform the prisoner of the rationale for its decision and to enable this Court to perform its review. In this case, the Parole Board's Notice of

---

[6] We, like the dissenting judge in *In re Parole of Glover*, 226 Mich App 655; 575 NW2d 772 (1997), lv gtd 458 Mich 866 (1998), question *Glover's* reliance on the dissent in *Greenholtz v Inmates of the Nebraska Penal & Correctional Complex*, 442 US 1; 99 S Ct 2100; 60 L Ed 2d 668 (1979), to support its holding that a parolable lifer has a liberty interest in her release on parole. Despite our reservations about the reasoning of *Glover*, we note that its written explanation requirement parallels that found in MCL 791.235(12); MSA 28.2305(12).

Action clearly failed to comply with MCL 791.235(12); MSA 28.2305(12). The board failed to explain why appellant's progress was insufficient to justify parole and did not expound on the factors involved in his crimes that contributed to the board's decision to deny parole. We note, however, that had the Parole Board conveyed the reasons set forth in the "Parole Board Hearing Comments" form to appellant in writing, the board would have provided an adequate written explanation of the reasons for its decision.

IV

We therefore vacate the circuit court's order of dismissal and remand this matter to the Parole Board for rehearing and reconsideration "after consideration of all the facts and circumstances." MCL 791.233(1)(a); MSA 28.2303(1)(a). In doing so, we emphasize that our decision today does not require that the Parole Board grant parole. We do not hold that the Parole Board abused its discretion in denying appellant parole. In fact, we observe that the comments set forth in other documents would have constituted "substantial and compelling" reasons for denying parole and a sufficiently detailed explanation for the decision. The Parole Board must, however, state those reasons in writing in order to comply with the statute.

The circuit court's order is vacated and the case is remanded to the Parole Board for further proceedings. We do not retain jurisdiction.