PEOPLE v BABCOCK

Docket No. 223624. Submitted September 6, 2000, at Lansing. Decided December 26, 2000, at 9:10 A.M.

Gerald L. Babcock pleaded guilty in the Jackson Circuit Court of two counts of criminal sexual conduct. The court, Alexander C. Perlos, J., sentenced him to three years' probation with the first year to be served in jail. The court then suspended all but sixty days of the jail term. The prosecution appealed by leave granted, alleging that the court's reasons for departing from the minimum statutory guidelines range of thirty-six to seventy-one months were not substantial and compelling.

The Court of Appeals *held*:

1. The statute codifying the new sentencing guidelines applicable to crimes committed on or after January 1, 1999, MCL 769.34; MSA 28.1097(3.4), requires trial courts in most instances to impose a minimum sentence within the appropriate sentence range and permits a departure from the guidelines only where there is a substantial and compelling reason to do so.

2. The Legislature, in enacting the statute, intended to preclude any appellate scrutiny of sentences falling within the appropriate guidelines range absent scoring errors or the reliance on inaccurate information. An appellate court must limit its review to whether the trial court had both a substantial and a compelling reason to depart from the guidelines. The Legislature intended substantial and compelling reasons to exist only in exceptional cases and to be of considerable worth in deciding the length of a sentence. The factors relied on by the trial court must be objective and verifiable.

3. The existence of a particular factor is a factual determination for the sentencing court and is reviewed by an appellate court for clear error. The determination that a particular factor is objective and verifiable is reviewed by an appellate court as a matter of law. A trial court's determination that the objective and verifiable factors constitute substantial and compelling reasons to depart from the statutory minimum sentence is reviewed for an abuse of discretion.

4. Once the Court of Appeals determines as a matter of law that the trial court's stated factor for departure was objective and verifi-

able, the Court of Appeals review is limited to whether the trial court abused its discretion in concluding that the factor constituted a substantial and compelling reason for the departure. If the Court of Appeals concludes that a substantial and compelling reason exists, the defendant's sentence must be affirmed as long as it comports with the statute and other requirements of law. The statute does not authorize the Court of Appeals to further review the overall sentence under the principle of proportionality.

5. The trial court erred in using factors already taken into consideration in scoring the prior record variables of the sentencing guidelines a second time to justify a sentencing departure without finding that the factors had been given inadequate or disproportionate weight.

6. The trial court failed to articulate substantial and compelling reasons for a downward departure and abused its discretion in imposing a sentence outside the guidelines range. The defendant's sentence must be vacated and the matter must be remanded for resentencing.

Vacated and remanded.

HOOD, J., concurring, stated that the trial court failed to articulate substantial and compelling reasons for a downward departure from the guidelines, thereby requiring vacation of the sentence and a remand for resentencing. However, resolution of the issue whether there were substantial and compelling reasons for departing from the guidelines does not require the Court of Appeals to decide what law must be applied where the sentence is within the guidelines. The issue regarding the interpretation and the scope of appellate review to be afforded MCL 769.34(10); MSA 28.1097(3.4)(10) was not raised in this case and is not an issue in this case. The Court of Appeals should neither issue an opinion regarding a statutory section that is not at issue before the Court nor abandon evolved Supreme Court precedent in making a determination regarding such an issue. The majority fails to comply with the rules of statutory construction in determining the appropriate standard of review and in concluding that the principle of proportionality has been abandoned. The Legislature has not abandoned the principle of proportionality; rather, it has incorporated the principle into the sentencing guidelines, and the principle is to be taken into consideration when departing from the sentencing guidelines.

1. SENTENCES — SENTENCING GUIDELINES.

The legislatively created sentencing guidelines require trial courts in most instances to impose a minimum sentence within the appropriate sentence range and permit trial courts to depart from the guidelines only where there is both substantial and compelling reasons

to do so; the factors relied on by the court must be objective and verifiable (MCL 769.34, 777.1 *et seq.*; MSA 28.1097[3.4], 28.1274[11] *et seq.*).

2. SENTENCES — SENTENCING GUIDELINES.

The Legislature's codification of the new sentencing guidelines applicable to crimes committed on or after January 1, 1999, precludes appellate review of sentences falling within the appropriate guidelines range absent scoring errors or reliance on inaccurate information (MCL 769.34[10]; MSA 28.1097[3.4][10]).

3. SENTENCES — SENTENCING GUIDELINES — DEVIATIONS FROM GUIDELINES RANGE.

The existence of a particular factor to justify a sentencing court's departure from the sentencing guidelines range is a factual determination for the sentencing court and is reviewed by an appellate court for clear error; the trial court's determination that a particular factor is objective and verifiable is reviewed by an appellate court as a matter of law; a trial court's determination that the objective and verifiable factors present in a particular case constitute substantial and compelling reasons to depart from the statutory minimum sentence is reviewed by an appellate court for an abuse of discretion.

4. SENTENCES — APPEAL — SENTENCING GUIDELINES — DEVIATIONS FROM GUIDELINES RANGE.

The Court of Appeals, once it determines as a matter of law that a sentencing court's stated factor for departure from the statutory sentencing guidelines applicable to crimes committed on or after January 1, 1999, was objective and verifiable, must limit its review of a sentence to whether the sentencing court abused its discretion in concluding that the factor constituted a substantial and compelling reason for the departure; the sentence must be affirmed as long as it otherwise comports with the sentencing guidelines statute and other requirements of law where the Court of Appeals concludes that a substantial and compelling reason exists; the statutory sentencing guidelines do not authorize the Court of Appeals to further review the overall sentence under the principle of proportionality stated in *People v Milbourn*, 435 Mich 630 (1990) (Const 1963, art 4, § 45; MCL 769.1[1], 769.34, 777.1 *et seq.*; MSA 28.1072[1], 28.1097[3.4], 28.1274[11] *et seq.*).

5. SENTENCES — SENTENCING GUIDELINES — DEVIATIONS FROM GUIDELINES RANGE

Factors that are considered in scoring the sentencing guidelines cannot be used a second time to justify a departure from the guide-

lines unless the court finds from the facts contained in the court record, including the presentence investigation report, that the factors have been given inadequate or disproportionate weight (MCL 769.34[3][b]; MSA 28.1097[3.4][3][b]).

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *John G. McBain*, Prosecuting Attorney, and *Jerrold Schrotenboer*, Chief Appellate Attorney, for the people.

*Bruce A. Barton, P.C.* (by *Bruce A. Barton*), for the defendant.

Before: TALBOT, P.J., and HOOD and GAGE, JJ.

TALBOT, P.J. Defendant was charged with one count of first-degree criminal sexual conduct, MCL 750.520b; MSA 28.788(2), involving his twelve-year-old "cousin." In exchange for defendant pleading guilty of two counts of second-degree criminal sexual conduct, MCL 750.520c; MSA 28.788(3), the prosecutor dropped the first-degree criminal sexual conduct charge. Although the legislatively created sentencing guidelines range for the minimum appropriate sentence was thirty-six to seventy-one months, the trial court sentenced defendant to three years' probation, with the first year to be served in jail. All but sixty days of defendant's jail term were suspended. This Court granted the prosecutor's application for leave to appeal. We vacate and remand for resentencing.

On appeal, the prosecutor argues that the trial court's reasons for departing from the minimum statutory guidelines range were not substantial and compelling. Defendant, on the other hand, contends that his sentence was proportionate. The issues raised by the parties require us to review the recent sentencing

guidelines legislation and the manner in which the statute affects the scope of appellate review.

By its very nature, sentencing is the community's response to crime. As such, the ultimate authority to provide for sentencing is constitutionally vested in the Legislature, Const 1963, art 4, § 45,[1] and delegated by the Legislature to the trial courts. See MCL 769.1(1); MSA 28.1072(1).[2] The Legislature empowered the trial court judiciary with the "unique role as the link between a defendant and a victim and between community values and the goals of the criminal justice system." *People v Milbourn*, 435 Mich 630, 670; 461 NW2d 1 (1990) (BOYLE, J., dissenting). As Justice BOYLE explained, *id.* at 680-681:

> The Michigan Constitution gives the Legislature the authority to provide for sentencing, a power which the people gave to that department of government. Pursuant to that authority, the Legislature enacted statutes which set the maximum punishment and gave the authority to set the minimum punishment to the trial court judiciary. Thus, indeterminate sentencing is a legislative delegation of constitutional authority to trial judges to tailor their sentences to the particular offender and the particular offense "within the legislatively prescribed range" of punishment for each felony. *Ante*, p 651.

---

[1] Const 1963, art 4, § 45 provides:

The legislature may provide for indeterminate sentences as punishment for crime and for the detention and release of persons imprisoned or detained under such sentences.

[2] MCL 769.1(1); MSA 28.1072(1) provides in relevant part:

A judge of a court having jurisdiction may pronounce judgment against and pass sentence upon a person convicted of an offense in that court. The sentence shall not exceed the sentence prescribed by law.

Historically, the trial courts could impose any sentence they deemed appropriate provided the sentence was indeterminate and did not exceed that which was authorized by law. Const 1963, art 4, § 45; MCL 769.1(1); MSA 28.1072(1); see also *Cummins v People*, 42 Mich 142, 144; 3 NW 305 (1879); *People v Harwood*, 286 Mich 96, 98; 281 NW 551 (1938); *In re Callahan*, 348 Mich 77, 80; 81 NW2d 669 (1957).

A lengthy period of appellate intervention began, however, with *People v Tanner*, 387 Mich 683; 199 NW2d 202 (1972), when our Supreme Court created the requirement that a minimum sentence imposed under the indeterminate sentence act could not exceed two-thirds of the maximum term. In *People v Coles*, 417 Mich 523, 550; 339 NW2d 440 (1983), the Court held that sentences were subject to appellate review and implemented a subjective "shocks the conscience" standard as the method for determining whether a sentence constituted a judicial abuse of discretion. The decision to impose this test was deemed justified because, even if the language of the governing constitutional and statutory provisions did not *authorize* appellate review, neither did it limit it. *Id.* at 534-535.

The first edition of the Michigan Sentencing Guidelines was developed soon after *Coles, supra*, was published. In an effort to gauge the "seriousness of a particular offense by a particular offender, as well as the disparity in sentencing between courtrooms," the guidelines' commission reviewed an extensive database of cases, representing the actual sentencing practices of trial judges, and created the first guidelines' ranges. *Milbourn, supra* at 655. To "facilitate judicial review," the Supreme Court called for trial

courts to use its commission-created Michigan Sentencing Guidelines, Administrative Order No. 1984-1, 418 Mich lxxx. See also Administrative Order No. 1985-2, 420 Mich lxii; Administrative Order No. 1988-4, 430 Mich ci. A few years later the Supreme Court made it an abuse of discretion for a trial court to impose a minimum sentence longer than the defendant was expected to live, reasoning that, no matter the severity of the crime, a criminal defendant should not be given an order it was impossible to obey. *People v Moore*, 432 Mich 311, 326; 439 NW2d 684 (1989).

The Court later abandoned the "shocks the conscience" test as unworkable and replaced it with the equally amorphous "principle of proportionality." *Milbourn, supra* at 635, 644-649. The Court held that a given sentence was invalid if it was not proportionate to the seriousness of the matter, taking into account the nature of the offense and the background of the offender. *Id.* at 651. Proportionality became the standard for measuring all sentences, and the guidelines were deemed a persuasive mechanism for judging whether the sentence was proportionate. The Court, *id.* at 656, also described the administratively ordered use of its guidelines as a "barometer" for determining appropriate sentencing practices, and explained that "[e]ven where some departure appears to be appropriate, the extent of the departure (rather than the fact of the departure itself) may embody a violation of the principle of proportionality." *Id.* at 660.

The principle of proportionality has been subject to criticism. In *People v Merriweather*, 447 Mich 799, 805; 527 NW2d 460 (1994), Justice BOYLE noted that this Court's opinion reversing the sentence imposed on the basis that it was disproportionate, "vividly evi-

dence[s] that elaborate rationalizations for lowering sentences distance the appellate judiciary from meaningful connection with reality and distort the concept of individualized justice." *Id.* In her view, by mediating the victim's tragedy through the "processes of proportionality and guidelines' evaluation, the focus of the reviewing court shifts from the horror of [the victim's] blood, feces, and burned flesh, to the image of an enfeebled and sympathetic defendant . . . ." *Id.* Justice BOYLE also wrote:

> I do not retreat from the view that in *People v Milbourn* . . . the Court violated separation of powers and usurped the authority constitutionally confided by the people of this state in their Legislature, . . . and by the Legislature in the trial courts . . . . [*Id.* at 805.]

The *Merriweather* majority went on to reject the premise that every prisoner must be eligible for parole, implicitly overruling *Moore, supra. Id.* at 805, 808-809, 811.

However, throughout the complex and sometimes tumultuous history of judicially created sentencing review, there has never been any legitimate dispute that the Legislature holds ultimate authority for determining the appropriate sentencing scheme for our state. Const 1963, art 4, § 45. For that reason, even at the height of its involvement in creating a framework for appellate sentencing review, our Supreme Court determined that it was "not prepared to *require* adherence" to the judicially created sentencing guidelines because of their lack of legislative mandate. *Milbourn, supra* at 656-657.

The Legislature has now reasserted its constitutional authority over the sentencing process by enact-

ing MCL 769.34; MSA 28.1097(3.4). This statute codifies the new sentencing guidelines applicable to crimes committed on or after January 1, 1999, MCL 769.34(1) and (2); MSA 28.1097(3.4)(1) and (2); *People v Greaux*, 461 Mich 339, 342, n 5; 604 NW2d 327 (2000),[3] and establishes clear and definitive standards for sentencing and sentencing review.

The statutory scheme returns a carefully defined sentencing responsibility to trial courts. Among other things, the statute requires trial courts in most instances to impose a minimum sentence within the appropriate sentence range. MCL 769.34(2)(a) and (b); MSA 28.1097(3.4)(2)(a) and (b). Recognizing that circumstances may exist that would warrant a departure, the statute permits trial courts to depart from the guidelines, but only where there is a substantial and compelling reason to do so. MCL 769.34(3); MSA 28.1097(3.4)(3).

The issues raised by the parties require us to examine the provisions of the statute that provide for appellate review. Statutory interpretation is a question of law that we review de novo on appeal. *People v Stone Transport, Inc*, 241 Mich App 49; 613 NW2d 737 (2000). The primary rule of statutory construction is to ascertain and give effect to the intent of the Legislature. *People v Borchard-Ruhland*, 460 Mich 278, 284; 597 NW2d 1 (1999). To determine the Legislature's intent, this Court must first look to the specific language of the statute. *Id.* If the plain and ordinary meaning of the statute is clear, judicial construction is not permitted. *Id.* A court may not go beyond the

---

[3] The actual guidelines, instructions, and definitions are primarily found in new chapter XVII of the Code of Criminal Procedure, 1998 PA 317, MCL 777.1 *et seq.*; MSA 28.1274(11) *et seq.*

words of the statute to determine the Legislature's intent unless the statutory language is ambiguous. *Id.* at 284-285.

Under the statute, the scope of this Court's review of a sentence imposed within the guidelines is specifically curtailed:

> If a minimum sentence is within the appropriate guidelines sentence range, the court of appeals *shall affirm* that sentence and shall not remand for resentencing absent an error in scoring the sentencing guidelines or inaccurate information relied upon in determining the defendant's sentence. [MCL 769.34(10); MSA 28.1097(3.4)(10) (emphasis added).]

The clear language of this subsection compels the conclusion that the Legislature intended to preclude any appellate scrutiny of sentences falling within the appropriate guidelines range absent scoring errors or reliance on inaccurate information. This conclusion is supported by the mandatory language requiring that this Court "shall affirm" sentences inside the guidelines, *People v Kelly*, 186 Mich App 524, 529; 465 NW2d 569 (1990), and by another provision in the same statute, which requires trial courts to advise a defendant that the defendant may appeal *only* when the sentence "is longer or more severe than the appropriate sentence range." MCL 769.34(7); MSA 28.1097(3.4)(7).

The pivotal question here is whether and to what extent this Court may review sentences imposed outside the guidelines range. In addition to requiring that this Court affirm minimum sentences within the guidelines except in limited circumstances, the Legislature provided clear direction regarding this Court's

review in cases where trial courts depart from the guidelines range:

> If, upon a review of the record, the court of appeals finds the trial court did not have *a substantial and compelling reason* for departing from the appropriate sentence range, the court shall remand the matter to the sentencing judge or another trial court judge for resentencing under this chapter. [MCL 769.34(11); MSA 28.1097(3.4)(11) (emphasis added).]

The plain and unambiguous language of this subsection directs appellate courts to limit their review to whether the trial court had "a substantial and compelling reason" to depart from the guidelines. Although the Legislature did not define "substantial and compelling" within the context of this new statute, it used the same phrase in the controlled substances act: "The court may depart from the minimum term of imprisonment . . . if the court finds on the record that there are substantial and compelling reasons to do so." MCL 333.7401(4); MSA 14.15(7401)(4).[4] The substantial and compelling standard as applied in that context was interpreted at length in *People v Fields*, 448 Mich 58; 528 NW2d 176 (1995). The Legislature is presumed to be aware of any existing judicial interpretation of words and phrases in the same subject area, and its silence suggests agreement with the court's construction. *Fletcher v Fletcher*, 447 Mich 871, 880; 526 NW2d 889 (1994); *Craig v Larson*, 432

---

[4] The Legislature has also used the term "substantial and compelling" as the standard for departure in the parole guidelines. MCL 791.233e(6); MSA 28.2303(6)(6). However, there is little reported case law addressing the standard in that context. See, e.g., *In re Parole of Johnson*, 219 Mich App 595; 556 NW2d 899 (1996); *In re Parole of Scholtz*, 231 Mich App 104; 585 NW2d 352 (1998).

Mich 346, 353; 439 NW2d 899 (1989); *Browning v Michigan Dep't of Corrections*, 385 Mich 179, 186; 188 NW2d 552 (1971). The fact that the Legislature chose to use this phrase again after it had been interpreted by our Supreme Court, and did not provide a different definition, evidences that it intended a similar interpretation of the phrase here.

In *Fields*, our Supreme Court recognized that "the words 'substantial and compelling' constitute strong language," and found it "reasonable to conclude that the Legislature intended 'substantial and compelling reasons' to exist only in exceptional cases." *Fields*, *supra* at 67-68. "[T]he reasons justifying departure should 'keenly' or 'irresistibly' grab our attention, and we should recognize them as being 'of considerable worth' in deciding the length of a sentence." *Id.* at 67. It is not enough for a factor to be merely substantial; it must be both substantial *and* compelling before departure is permitted, and the Legislature is presumed to "have consciously elevated the burden of proof" by its choice of the term "compelling." *Id.* at 83 (BOYLE, J., concurring). In keeping with the language of the statute and the intent of the Legislature, the *Fields* Court also determined that the factors relied on by the trial court must be objective and verifiable. *Id.* at 69-70. We believe the same interpretation, with its implicit reliance on reason and common sense, is appropriate here.

For the same reasons, we also conclude that the Legislature intended that appellate courts employ the standards of review set forth in *Fields*. In *Fields*, the Court held that

> the existence or nonexistence of a particular factor is a factual determination for the sentencing court to determine,

and should therefore be reviewed by an appellate court for
clear error. The determination that a particular factor is
objective and verifiable should be reviewed by the appellate
court as a matter of law. A trial court's determination that
the objective and verifiable factors present in a particular
case constitute substantial and compelling reasons to
depart from the statutory minimum sentence shall be
reviewed for abuse of discretion. [*Id.* at 77-78 (citations
omitted).]

The traditional meaning of the term "abuse of discre-
tion" is well settled and oft quoted:

The term discretion itself involves the idea of choice, of
an exercise of the will, of a determination made between
competing considerations. In order to have an "abuse" in
reaching such determination, the result must be so palpably
and grossly violative of fact and logic that it evidences not
the exercise of will but perversity of will, not the exercise
of judgment but defiance thereof, not the exercise of reason
but rather of passion or bias. [*Spalding v Spalding*, 355
Mich 382, 384-385; 94 NW2d 810 (1959).]

The *Spalding* standard has been relied on over the
years by both this Court and our Supreme Court, and
it was recently reaffirmed by the Supreme Court as
"essentially intact." See *Alken-Ziegler, Inc v Water-
bury Headers Corp*, 461 Mich 219, 228; 600 NW2d 638
(1999). See also *Bean v Directions Unlimited, Inc*,
462 Mich 24, 35; 609 NW2d 567 (2000); *People v
Thenghkam*, 240 Mich App 29, 49; 610 NW2d 571
(2000); *People v Wilhite*, 240 Mich App 587, 595; 618
NW2d 386 (2000).

Defendant seems to suggest that, regardless of
whether there were substantial and compelling rea-
sons to depart from the guidelines' range, his sen-
tence should still be affirmed as proportionate under
*Milbourn, supra.* As a result of defendant's assertion

that his sentence should be reviewed for proportionality, the question remains whether the statute permits appellate courts to further review the sentence once it has determined that a substantial and compelling reason to depart exists.

The Legislature was well aware that there would be guidelines departures, because it specifically incorporated a structure for departures into the statute. MCL 769.34(3); MSA 28.1097(3.4)(3), MCL 769.34(11); MSA 28.1097(3.4)(11). We find no language in the statute that allows for additional review of a sentence outside the guidelines once a substantial and compelling reason has been found. The Legislature was clearly aware of the existing case law, choosing to embrace the *Tanner* rule, MCL 769.34(2)(b); MSA 28.1097(3.4)(2)(b), as well as the *Milbourn* principle generally precluding guideline departures on factors already incorporated in the guidelines. MCL 769.34(3); MSA 28.1097(3.4)(3); *Milbourn, supra* at 660-661. The decision to incorporate some judicially established principles and not to provide for further review of sentencing departures, including a *Milbourn* review for proportionality, evidences a conscious decision to exclude that method of review from the framework of this statute. *People v Cash*, 419 Mich 230, 241; 351 NW2d 822 (1984). It is axiomatic that legislation cannot be written to address every negative proposition, and we are unwilling to presume that any *un*stated concept was intended by the Legislature. There is no question that the Legislature could have provided for additional review of sentencing departures if it had chosen to do so. We will not read the Legislature's omission as an accident or an ambiguity. Because the statutory language is not ambiguous, further construc-

tion is not permitted. *Borchard-Ruhland, supra* at 284-285. If we are wrong and proportionality review was intended, the Legislature can easily amend the statute to include it. This Court will not reach beyond the statute's clearly written language. *Id.* at 284.[5]

Accordingly, we hold that, once this Court determines as a matter of law that the trial court's stated factor for departure was objective and verifiable, our review is limited to whether the trial court abused its discretion in concluding that the factor constituted a substantial and compelling reason to depart. If we conclude that a substantial and compelling reason exists, the defendant's sentence must be affirmed as long as the sentence otherwise comports with the statute and other requirements of law. Const 1963, art 4, § 45; MCL 769.1(1); MSA 28.1072(1). We find no authorization in the statute for this Court to further review the overall sentence under the *Milbourn* principle of proportionality. We are, of course, not so presumptuous as to suggest that this Court could overrule *Milbourn*. Until and unless our Supreme Court says otherwise, *Milbourn* remains good law. However, we simply cannot conclude that the Legislature intended to incorporate the principle of proportionality into the new sentencing review framework. Consequently, we reject defendant's argument that his sentence should be reviewed for proportionality.

---

[5] We should not be surprised by the Legislature's abandonment of a proportionality review of the length of the sentence itself. At the onset of sentencing review, Justice CAVANAGH predicted that "[t]he scope of review may subsequently evolve, by means of case law or statutory enactment, into something more definite or even different from that which we announce today." *Coles, supra* at 549. As the Court anticipated, the scope and method of sentencing review has evolved drastically, first by case law and now by the authoritative enactment of legislation.

We now turn to the record before us. The trial court stated several reasons for its desire to depart from the guidelines range. The trial court first pointed to defendant's lack of a prior criminal record. Although a defendant's prior record is an objective and verifiable factor, *Fields, supra* at 77, it is already taken into consideration in scoring the prior record variables of the sentencing guidelines. Factors that are considered in scoring the guidelines cannot be used a second time to justify a sentencing departure unless the court finds "from the facts contained in the court record, including the presentence investigation report, that the characteristic has been given inadequate or disproportionate weight." MCL 769.34(3)(b); MSA 28.1097(3.4)(3)(b). The trial court made no such finding, and there is nothing in the record to suggest that such a finding would have been appropriate.

The trial court also stated that the crime involved "a family situation . . . something that might not happen again." We agree that the existence of a family situation is objective and verifiable. It is clear, however, from the instructions to the guidelines that the Legislature intended for family victimization to be used in the scoring process to enhance rather than reduce the sentencing range. See Offense Variable 10, MCL 777.40; MSA 28.1274(50). The trial court further noted that it was clear from defendant's appearance in court and from the record before him that defendant "still didn't fully appreciate what he's done." The trial court's impressions are by definition subjective. To the extent that there may be evidence that defendant blamed the twelve-year-old victim and did not accept responsibility for his acknowledged crime, this factor would again serve to enhance rather than

reduce his sentence. Because the trial court failed to articulate a substantial and compelling reason for a downward departure, we conclude that it abused its discretion in imposing a sentence outside the guidelines range.

We therefore vacate defendant's sentence and remand for resentencing. MCL 769.34(11); MSA 28.1097(3.4)(11). On remand, the trial court is free to impose any minimum sentence within the appropriate guidelines range or to depart from that range if there is a substantial and compelling reason to do so.

Vacated and remanded for resentencing. We do not retain jurisdiction.

GAGE, J., concurred.

HOOD, J. (*concurring*). I agree that the trial court failed to articulate substantial reasons for a downward departure from the guidelines, thereby requiring vacation of the sentence and remand for resentencing. I write separately because my interpretation of the rationale of the majority opinion reveals that it does not comport with existing precedent.

In this case, defendant was charged with first-degree criminal sexual conduct, MCL 750.520b(1)(a); MSA 28.788(2)(1)(a) (sexual penetration with a person under thirteen). In exchange for his guilty plea, the prosecutor orally amended the information and allowed defendant to plead guilty of two counts of second-degree criminal sexual conduct, MCL 750.520c(1)(a); MSA 28.788(3)(1)(a) (sexual contact with a person under thirteen)[1] for acts involving a

---

[1] The plea to the amended charges occurred on September 23, 1999, and an amended information was filed on September 24, 1999.

"cousin" that occurred in April 1999. On November 4, 1999, the trial court sentenced defendant, but found substantial and compelling reasons to depart from the guidelines. Specifically, the trial court stated:

> If there's no one to make any further comment, the Court is ready to pass sentence.
>
> In passing sentence, Mr. Babcock, it's this Court's duty not only to punish the person for what they've done, but also to deter others from acting this way, protect society, and possibly reform that person.
>
> I've looked at you and your background here, and I still don't think you fully appreciate what you did here. I still don't think you really—it doesn't really sink in on you, and this is from my observation from your appearance in court and what I read in this report.
>
> I also think, though, that the guidelines in this case are too harsh. And I think there are substantial and compelling reasons for this Court to deviate from the guidelines. And I—in view of the fact that this particular instance—it was a family situation that didn't happen to—something that might not happen again, if you stay away from young girls. I think that treatment on the outside can be better given to you and do more good than putting you in prison. So I don't think you're really a candidate yet for prison. But if you deviate from your probationary sentence that I'm going to impose, Mr. Babcock, there's no question that's where you're going to be going to.

> \*        \*        \*

> So the Court is going to deviate because I think the guidelines are too harsh, and you have no prior convictions, and I think that the treatment that can be afforded to you in this community can do more good to rehabilitate you than placing you in a prison environment.
>
> It's therefore the sentence of the Court that you be placed on probation for a period of three years. That your first year of probation is to be in the Jackson County Jail. However, I'm going to suspend most of that. I am going to order

that you do 60 days of your jail forthwith, and the balance
will be suspended.

The trial court also prepared a written departure
statement that provided:

The Court has varied from the guidelines in this sentence
because the defendant does not have any prior convictions.
He should be able to be treated and rehabilitated better
outside the prison system. The guideline [sic] appear to be
too severe for the facts of this case.

The prosecutor appeals, by leave granted, from the
trial court's conclusion that substantial and compel-
ling reasons exist to radically depart from the statuto-
rily mandated sentence guidelines that called for a
minimum sentence of thirty-six to seventy-one
months. Thus, we are only called on to decide
whether there were substantial and compelling rea-
sons for *departing* from the guidelines. I do not
believe that a resolution of this issue requires us to
decide what law must be applied where sentences are
*within* the guidelines. Adherence to resolution of dis-
puted issues is imperative where the majority opin-
ion, in effect, overrules Supreme Court precedent.

The offenses in this matter occurred in April 1999.
MCL 769.34(1); MSA 28.1097(3.4)(1) provides that the
sentencing guidelines promulgated by order of the
Michigan Supreme Court do not apply to this sen-
tence. Rather, the sentencing guidelines enacted by
the Legislature were to apply to enumerated felonies
committed on or after January 1, 1999. MCL
769.34(2); MSA 28.1097(3.4)(2). MCL 769.34(10); MSA
28.1097(3.4)(10) provides:

> If a minimum sentence is within the appropriate guidelines sentence range, the court of appeals shall affirm that sentence and shall not remand for resentencing absent an error in scoring the sentencing guidelines or inaccurate information relied upon in determining the defendant's sentence. A party shall not raise on appeal an issue challenging the scoring of the sentencing guidelines or challenging the accuracy of information relied upon in determining a sentence that is within the appropriate guidelines sentence range unless the party has raised the issue at sentencing, in a proper motion for resentencing, or in a proper motion to remand filed in the court of appeals.

The majority examines the language of MCL 769.34(10); MSA 28.1097(3.4)(10) to conclude that appellate scrutiny of sentences is constrained to scoring errors or inaccurate information and that the historic view of nonintervention involving appellate review has been restored. We are obligated to review issues that are properly raised and preserved. *People v Cain*, 238 Mich App 95, 127; 605 NW2d 28 (1999). This issue of the interpretation and the scope of appellate review to be afforded MCL 769.34(10); MSA 28.1097(3.4)(10) has not been raised, addressed, argued, or even briefed by the parties and, more importantly, is not an issue in the case. The sole issue raised on appeal is whether the trial court had substantial and compelling reasons to depart downward from the guidelines. We do not render advisory opinions, *People v Wilcox*, 183 Mich App 616, 620; 456 NW2d 421 (1990), and this statutory provision does not warrant an opinion in this case. Therefore, it is inappropriate for the majority to issue an opinion regarding a statutory section that is not an issue before this Court and in the course of that determination abandon evolved Supreme Court precedent.

Rather, MCL 769.34(11); MSA 28.1097(3.4)(11) is at issue in this case and provides:

> If, upon a review of the record, the court of appeals finds the trial court did not have a substantial and compelling reason for departing from the appropriate sentence range, the court shall remand the matter to the sentencing judge or another trial court judge for resentencing under this chapter.

Statutory interpretation presents a question of law that we review de novo. *People v Nimeth*, 236 Mich App 616, 620; 601 NW2d 393 (1999). When resolving disputed interpretations of statutory language, it is the function of the reviewing court to effectuate the legislative intent. *People v Valentin*, 457 Mich 1, 5; 577 NW2d 73 (1998). When the language of the statute is clear, the Legislature intended the meaning plainly expressed, and the statute must be enforced as written. *Id.* Technical words and phrases, such as words that may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to the appropriate meaning. MCL 8.3a; MSA 2.212(1). We presume that every word has some meaning and must avoid any construction that would render any part of the statute surplusage or nugatory. *People v Borchard-Ruhland*, 460 Mich 278, 285; 597 NW2d 1 (1999). The omission of a provision from one part of a statute that is included in another part of a statute must be construed as intentional. That is, we "cannot assume that the Legislature inadvertently omitted from one statute the language that it placed in another statute, and then, on the basis of that assumption, apply what is not there." *Farrington v Total Petroleum, Inc*, 442 Mich 201, 210; 501 NW2d 76 (1993). To discover legislative intent, provisions of

a statute must be read in the context of the entire statute to produce, if possible, an harmonious and consistent whole. *Weems v Chrysler Corp*, 448 Mich 679, 699-700; 533 NW2d 287 (1995). Statutes are to be construed to prevent absurd results, injustice, or prejudice to the public interest. *People v Stephan*, 241 Mich App 482, 497; 616 NW2d 188 (2000).

Statutory language should be construed in a reasonable manner, keeping in mind the purpose of the statute. *People v Seeburger*, 225 Mich App 385, 391; 571 NW2d 724 (1997). Nothing may be read into a statute that is not within the manifest intent of the Legislature as gathered from the act itself. *In re Juvenile Commitment Costs*, 240 Mich App 420, 427; 613 NW2d 348 (2000). If reasonable minds can differ regarding the meaning of a statute, judicial construction is appropriate. *Id.* The construing court looks to the object of the statute in light of the harm it is designed to remedy and applies a reasonable construction that will accomplish the Legislature's purpose. *Id.* Statutes that relate to the same subject matter or share a common purpose are in pari materia and must be read together as one law, even if they contain no reference to one another and were enacted on different dates. *Stephan, supra.*

In my view, the majority opinion fails to comply with the rules of statutory construction in determining the appropriate standard of review and in concluding that the principle of proportionality has been abandoned. That is, when confronted with the issue of the interpretation of MCL 769.34(11); MSA 28.1097(3.4)(11), the majority does not resort to the rules of statutory construction or legislative intent to determine what standard of review should be applied.

Rather, the majority concludes that the Legislature was silent on this issue and resorts to interpretative case law. However, MCL 769.34(3); MSA 28.1097(3.4)(3) sets forth how the determination regarding substantial and compelling reasons for a departure is made:

> A court may depart from the appropriate sentence range established under the sentencing guidelines set forth in chapter XVII if the court has a substantial and compelling reason for that departure and states on the record the reasons for departure. All of the following apply to a departure:
>
> (a) The court shall not use an individual's gender, race, ethnicity, alienage, national origin, legal occupation, lack of employment, representation by appointed legal counsel, representation by retained legal counsel, appearance in propria persona, or religion to depart from the appropriate sentence range.
>
> (b) The court shall not base a departure on an offense characteristic or offender characteristic already taken into account in determining the appropriate sentence range unless the court finds from the facts contained in the court record, including the presentence investigation report, that the characteristic has been given inadequate or disproportionate weight.

Review of MCL 769.34(3)(b); MSA 28.1097(3.4)(3)(b) reveals that the Legislature has not abandoned the principle of proportionality, but, rather, incorporated the principle into the sentencing guidelines, and it is to be taken into consideration when departing from the sentencing guidelines. Reading the entire statute as a whole, I would conclude that it is inappropriate to turn to external resources for determining a standard of review when the statute itself sets forth the bias factors and the principle of proportionality that

are to be examined in finding substantial and compelling reasons.[2] Additionally, when viewing the statutes in pari materia, MCL 769.33; MSA 28.1097(3.3), the statute that created the commission that developed the codified sentencing guidelines, expressly provided that the sentencing guidelines would accomplish the principle of proportionality. MCL 769.33(1)(e)(*iii*); MSA 28.1097(3.3)(1)(e)(*iii*). Accordingly, I would not turn to outside sources, abandon the principle of proportionality, and adopt from case law an abuse of discretion standard. Rather, I would utilize the rules of statutory construction to conclude that the principle of proportionality is alive and well and is a measure for use by trial courts in determining departure and the appellate courts which, in turn, examine the criteria utilized by the trial courts.

Furthermore, where reasonable minds differ regarding the meaning of a statute, judicial construction is appropriate. *In re Juvenile Commitment Costs, supra.* The construing court also examines the object of the statute in light of the harm it is designed to remedy and applies a reasonable construction that will accomplish the legislative purpose. *Id.* Review of the purpose of the statute and the legislative history reveals that the Legislature did not intend to return to the historical view of appellate nonintervention in sentencing, but rather codified the majority opinions regarding sentencing issued by the Supreme Court. The House Legislative Analysis for 1994 PA 445 pro-

---

[2] I also note that the statute directly addresses the Court of Appeals in MCL 769.34(10) and (11); MSA 28.1097(3.4)(10) and (11), and the trial court in MCL 769.34(7); MSA 28.1097(3.4)(7). However, MCL 769.34(3); MSA 28.1097(3.4)(3) places no restriction on the court involved in examining substantial and compelling reasons for departure.

vided that the bill would create a sentencing commission to develop sentencing guidelines that would reduce sentencing disparities and be proportionate to the seriousness of the offense and the offender's prior record. The analysis indicated that the Legislature was familiar with existing precedent regarding the sentencing guidelines. It noted that the bill was created to *complement* the Supreme Court decision in *People v Milbourn,* 435 Mich 630; 461 NW2d 1 (1990). House Legislative Analysis, HB 4782, February 24, 1995. Furthermore, it noted the need for legislative guidelines because, in *Milbourn,* there was a reluctance to require strict adherence to the guidelines when the judicially created guidelines did not have a legislative mandate. *Id.* There is no discussion in the legislative history of the need to limit appellate review of sentences despite the harsh criticisms by Justice BOYLE and others and the numerous law review articles tracing the history of sentencing and criticizing appellate intervention in sentencing issues.[3]

Furthermore, the Legislature is presumed to be aware of and legislate in harmony with existing laws when enacting new laws. *Walen v Dep't of Corrections,* 443 Mich 240, 248; 505 NW2d 519 (1993). In the present case, the Legislature appears to have been aware of existing case law regarding Supreme Court precedent in the area of sentencing. Review of MCL 769.34(2)(b); MSA 28.1097(3.4)(2)(b) reveals that it is a codification of *People v Tanner,* 387 Mich 683; 199

---

[3] Casenote, *Michigan criminal sentencing,* 73 U Det Mercy L R 653 (1996); Note, *The Michigan sentencing guidelines and the transfer of sentencing discretion by means of proportionality: The fall of the house that* Coles *and* Milbourn *built,* 71 U Det Mercy L R 385 (1994); Casenote, People v Moore: *The role of discretion in indeterminate sentencing,* 1989 Det Col L R 1275 (1989).

NW2d 202 (1972). Additionally, the legislative history reveals that the Legislature was aware of *Milbourn, supra,* and intended to and expressly did incorporate it into the guidelines. MCL 769.33(1)(e)(*iii*); MSA 28.1097(3.3)(1)(e)(*iii*), MCL 769.34(3)(b); MSA 28.1097(3.4)(3)(b). Furthermore, because the Legislature is aware of *Milbourn, supra,* it is aware that the Supreme Court concluded long ago that the Legislature intended to adopt the principle of proportionality. Specifically, in *Milbourn, supra* at 650-651, 659-661, our Supreme Court attributed to the Legislature the intent to adopt the principle of proportionality and the intent that the standard would also govern appellate review:

> When the legislative scheme for criminal sentencing is viewed across the spectrum of crimes from misdemeanor traffic violations to cold-blooded murders, two aspects are immediately clear. First, the Legislature has endeavored to provide the most severe punishments for those who commit the most serious crimes. The crime of murder, for example, is punishable by a longer term than is the lesser included crime of assault. Second, offenders with prior criminal records are likewise subject to harsher punishment than those with no prior convictions, as reflected in the general and specific habitual offender provisions of the penal statutes. These two elements combine to form what might be called the "principle of proportionality." As stated over three quarters of a century ago by the United States Supreme Court, "[I]t is a precept of justice that punishment for the crime should be graduated and proportioned to the offense." *Weems v United States,* 217 US 349, 367; 30 S Ct 544; 54 L Ed 793 (1910). . . .
>
> Turning from the legislative felony sentencing scheme in general to the prescribed punishment for individual felonies, we note that the Legislature has, with only a few exceptions, provided a range of punishment for each felony. Because the Legislature in addressing criminal punishment

in general has subscribed to the principle of proportionality and because the commission of a given crime by a given offender may also vary considerably in seriousness, we believe it reasonable to conclude that the Legislature, in setting a range of allowable punishments for a single felony, intended persons whose conduct is more harmful and who have more serious prior criminal records to receive greater punishment than those whose criminal behavior and prior record are less threatening to society.

The Legislature then left to the judiciary, with regard to most crimes, the task of determining the sentence to be imposed upon each offender within given bounds. We believe that judicial sentencing discretion should be exercised, within the legislatively prescribed range, according to the same principle of proportionality that guides the Legislature in its allocation of punishment over the full spectrum of criminal behavior. Thus, a judge helps to fulfill the overall legislative scheme of criminal punishment by taking care to assure that the sentences imposed across the discretionary range are proportionate to the seriousness of the matters that come before the court for sentencing. In making this assessment, the judge, of course, must take into account the nature of the offense and the background of the offender.

\*     \*     \*

Where there is a departure from the sentencing guidelines, an appellate court's first inquiry should be whether the case involves circumstances that are not adequately embodied within the variables used to score the guidelines. A departure from the recommended range in the absence of factors not adequately reflected in the guidelines should alert the appellate court to the possibility that the trial court has violated the principle of proportionality and thus abused its sentencing discretion. Even where some departure appears to be appropriate, the extent of the departure (rather than the fact of the departure itself) may embody a violation of the principle of proportionality. . . .

\*     \*     \*

. . . [T]he key test is whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range.

Review of the *Milbourn* decision reveals that the Legislature was on notice of the intent ascribed to the graduated punishment scheme as an adoption of the principle of proportionality and the Supreme Court's intent that sentences be reviewed on appeal accordingly. The Legislature has, by its adoption of the guidelines, affirmed the intent ascribed by the Supreme Court in *Milbourn*. Therefore, I would hold that it could not, by its silence, revoke appellate review of sentences for proportionality, but rather had to, in light of *Milbourn*, make an affirmative statement to abolish that standard of review. Because I conclude that the Legislature did not abolish appellate review of the principle of proportionality, an opinion to the contrary acts in contravention of Supreme Court precedent.

Returning to the sole issue at hand, the trial court concluded that there were substantial and compelling reasons to depart from the guidelines. In reaching that assessment, the court could not consider an offense characteristic or offender characteristic incorporated into the sentencing range unless the court found that the characteristic was given inadequate or disproportionate weight. MCL 769.34(3)(b); MSA 28.1097(3.4)(3)(b). Second-degree criminal sexual conduct is an enumerated felony included in the legislative guidelines. MCL 777.16y; MSA 28.1274(26y). The trial court's reasons for imposing a three-year probationary sentence with sixty days in jail included the "harshness" of the guidelines, the lack of a prior record, and the presence of a family relationship.

Prior record variables are incorporated into the guidelines, and the trial court failed to conclude that this variable was given inadequate or disproportionate weight. Rather, the trial court principally seemed to disagree with the "harshness" of the sentence guidelines. However, the trial court's personal disagreement with the guidelines is not a substantial and compelling reason for deviation from the guidelines. Therefore, I agree with the majority that the trial court failed to state substantial and compelling reasons for the departure and that resentencing is required. Finally, with regard to defendant's contention that the plea agreement that allowed him to plead guilty of two counts of second-degree criminal sexual conduct was designed to avoid prison time, there is no record of any plea and sentence agreement in accordance with *People v Cobbs*, 443 Mich 276; 505 NW2d 208 (1993). Accordingly, defendant's contention is without merit.

In summary, it is not clear to me that the Legislature had totally relegated *Milbourn* to the judicial scrap heap, and I would await guidance from either the Legislature or the Supreme Court before making such a pronouncement. Because it is abundantly clear that the trial court did not articulate substantial and compelling reasons for its drastic downward departure from the guidelines, I agree that we must vacate the sentence and remand for resentening. Therefore, I concur with the majority's disposition in this case.