*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MICHAEL RAY DUNCAN,

        Defendant-Appellant.

UNPUBLISHED
August 11, 2025
9:28 AM

No. 370447
Wayne Circuit Court
LC No. 85-006004-01-FC

Before: GADOLA, C.J., and RICK and YATES, JJ.

PER CURIAM.

Defendant, Michael Ray Duncan, was 17 years old when he broke into the home of an 85-year-old woman, threatened to kill her with a knife, took $60 from her, raped her, tied her up in a chair where she sat bleeding for hours until she was finally able to free herself, and ransacked her house. For all that, defendant was convicted by jury verdict of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1); armed robbery, MCL 750.529; and breaking and entering an occupied dwelling with intent to commit armed robbery or CSC-I, MCL 750.110. The trial court sentenced defendant to serve prison terms of 125 to 250 years for CSC-I, 50 to 100 years for armed robbery, and 10 to 15 years for breaking and entering. On direct appeal, this Court vacated the sentence for CSC-I, but upheld the sentence for armed robbery. On remand, the trial court imposed a sentence of life imprisonment with the possibility of parole for CSC-I, which this Court affirmed. In 2023, defendant attacked his sentences by seeking relief under MCR 6.501 *et seq*. The trial court granted relief from the CSC-I sentence and imposed a new prison term of 40 to 60 years for CSC-I, but the trial court left in place the sentence for armed robbery. Although defendant challenges his sentence of 50 to 100 years' imprisonment for armed robbery on both procedural and constitutional grounds, we lack appellate jurisdiction to address those challenges because defendant filed a claim of appeal of right, rather than an application for leave to appeal, as required by MCR 6.509(A).

## I. FACTUAL BACKGROUND

In resolving defendant's claims on direct appeal in 1987, this Court set forth the events that led to defendant's convictions:

Defendant's victim was . . . an 85-year-old woman who lived alone in the City of Detroit. Shortly after noticing at about 11 p.m. on August 28, 1985, that the screen in her utility room had been cut, [the victim] heard a noise and got up to investigate. She encountered defendant in her kitchen. He was holding a knife and threatened to kill her if she did not give him her money. She went to her bedroom, where she kept her purse. Defendant followed her. She gave him her purse. He took $60 and emptied the coins onto the bed. He wanted more money. She explained that she had no more. He grabbed her, opened . . . her housecoat, tore her housecoat, and told her to . . .[1]

* * *

. . . her, and his penis penetrated her vagina. He got up and, knife in hand, ordered her to sit in a chair. As he was tying her to the chair, he threatened to kill her if she did not tell him where the keys to her door were. He took a pillow case from her bed, put it in her mouth and tied it very tightly around her neck. After he tied her to the chair, defendant piled things from her dresser, jewelry box and drawers on the floor. As he left, he told her he would be back.

[The victim] saw a nail file on the floor and picked it up with her toes. After working on the rope with the file for about 2-1/2 hours, she broke loose. She was bleeding profusely from her vagina. She telephoned her son and the police.

Defendant was arrested on September 4, 1985, and confessed. At trial, he testified that he had merely acted as a lookout for the person who entered [the victim]'s home. [*People v Duncan*, unpublished per curiam opinion of the Court of Appeals, issued July 13, 1987 (Docket No 91717), pp 1-2.]

On December 20, 1985, after defendant's jury trial ended in convictions on all three counts, the trial court sentenced defendant to prison terms of 125 to 250 years for CSC-I, 50 to 100 years for armed robbery, and 10 to 15 years for breaking and entering an occupied dwelling. On direct appeal, defendant asserted that the trial judge erred in denying him a bench trial, and that the prison sentences he received for CSC-I and armed robbery were improper. This Court, however, rejected those arguments. Addressing defendant's challenges to his sentences, this Court observed that the trial "judge tailored the sentences to the particular circumstances of this case and to the particular characteristics of the defendant." *Id*. at 5. Also, "[d]efendant's sentences do not far exceed what all reasonable persons would perceive to be appropriate responses to defendant and to his offense." *Id*. Additionally, defendant has not "shown that his sentences are significantly disproportionate to sentences generally imposed upon similarly situated defendants who have been convicted of the same crimes under similar facts and circumstances." *Id*. In other words, this Court found no basis

---

[1] The reason for missing words in that excerpt is that this Court's opinion was issued on paper that was 14 inches in length, so when the opinion was scanned for preservation in the only form that is now available, the last few lines on each page were cut off.

for defendant's assertion that his sentences were impermissibly disproportionate to the offense and the offender.

On November 16, 1990, "in lieu of granting leave to appeal," our Supreme Court remanded defendant's case "to the Court of Appeals for reconsideration in light of *People v Moore*, 432 Mich 311, 328-329 (1989)." *People v Duncan*, 437 Mich 857 (1990). On remand, this Court vacated defendant's sentence for CSC-I as improper, but affirmed defendant's sentence for armed robbery, explaining that defendant, "who was age 18 at the time of sentencing, has a reasonable prospect of actually serving the 50- to 100-year sentence imposed on the armed robbery conviction." *People v Duncan*, unpublished memorandum of the Court of Appeals, issued January 18, 1991 (Docket No. 135027).

On March 1, 1991, the trial court imposed a parolable life sentence for CSC-I, but left the armed-robbery sentence undisturbed. Defendant again appealed, contesting the application of the sentencing guidelines, and challenging the sentence of parolable life imprisonment for CSC-I as disproportionate. *People v Duncan*, unpublished memorandum of the Court of Appeals, issued September 1, 1993 (Docket No. 141631), p 1. This Court reviewed defendant's new sentence for CSC-I and explained that the "sentence was proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Duncan*, unpub op at 1.

Nearly 30 years later, defendant filed a motion requesting relief under MCR 6.501 *et seq.*, with respect to his sentences for CSC-I and armed robbery. Defendant characterized his sentences for those two offenses as unconstitutional. In response, the prosecution acknowledged that the life sentence for CSC-I was impermissible, but argued that the prison term of 50 to 100 years for armed robbery passed muster. At the resentencing hearing on January 12, 2024, the trial court imposed a prison sentence of 40 to 60 years on the CSC-I conviction, but the trial court decided to leave the sentence for armed robbery undisturbed, meaning that the prison term of 50 to 100 years remained in place. On April 8, 2024, the trial court entered a new judgment of sentence stating that defendant was "resentenced on Count 3 [i.e., CSC-I] only" to a prison term "to run concurrent to previously entered sentence[s] for Counts 1 and 2," i.e., breaking and entering and armed robbery, with those two sentences "unchanged." Defendant appeals the trial court's decision with regard to the original prison term for armed robbery, but not the new prison term for CSC-I.

## II. LEGAL ANALYSIS

On appeal, defendant contests the trial court's handling of his sentence for armed robbery on two grounds. First, defendant contends that the trial court committed an abuse of discretion by refusing to resentence him for armed robbery. Second, defendant argues that his prison term of 50 to 100 years for armed robbery is disproportionate and constitutes cruel or unusual punishment, so that sentence must be declared unconstitutional, and the case must be remanded for resentencing. We shall address those two arguments in turn.

## A. PROCEDURAL CHALLENGES

The trial court's statements at the sentencing hearing and its judgment of sentence leave no doubt that the trial court simply left undisturbed the armed-robbery sentence imposed in 1985. As a result, the trial court made no independent decision that defendant must serve 50 to 100 years in

prison for armed robbery. Instead, it explained that it lacked authority to alter that sentence, which was imposed three decades earlier and subsequently reviewed and affirmed by this Court. Citing *People v Skinner*, 502 Mich 89, 131-132; 917 NW2d 292 (2018), defendant concedes that we can review the trial court's decision only for an abuse of discretion.

Defendant faults the trial court for deciding that it lacked the authority to alter the sentence for armed robbery imposed in 1985. This Court repeatedly affirmed that 1985 sentence for armed robbery on direct appeal, explaining that it was proportionate and constitutionally sound. Because of those rulings on the merits, defendant cannot seek relief under MCR 6.501 *et seq.*, by contesting anew issues that this Court resolved on direct appeal. As MCR 6.508(D)(2) states: "The court may not grant relief to the defendant if the motion [for relief from judgment] alleges grounds for relief which were decided against the defendant in a prior appeal . . . unless the defendant establishes that a retroactive change in the law has undermined the prior decision[.]"

Recognizing that complication, defendant asserts that our Supreme Court's order in *People v Turner*, 505 Mich 954 (2020), has undermined this Court's decisions upholding the sentence for armed robbery. The trial court concluded that, for several reasons, *Turner* has no application here. In *Turner*, our Supreme Court addressed a case in which a juvenile sentenced to life without parole was granted a reduced sentence under MCL 769.25a, which "creates a resentencing procedure for sentences in violation of *Miller v Alabama*, 567 US 460 (2012), and *Montgomery v Louisiana*, 577 US 190 (2016)." *Turner*, 505 Mich at 954. The debate before our Supreme Court in *Turner* turned upon the defendant's ability to challenge concurrent sentences for other crimes in the wake of the reduction of his sentence of life without parole for first-degree murder. Specifically, the defendant wanted to challenge his concurrent sentences, which he described as artificially high because those sentences were all based on the trial court's "legal misconception that the defendant was required to serve a mandatory sentence of life without parole on the greater offense" of first-degree murder. *Id*. at 955. Our Supreme Court held that, "at a *Miller* resentencing, the trial court may exercise its discretion to resentence a defendant on a concurrent sentence if it finds that the sentence was based on a legal misconception that the defendant was required to serve a mandatory sentence of life without parole on the greater offense." *Id*.

The dissimilarities between *Turner* and defendant's case are obvious and significant. First, defendant was neither the subject of a *Miller* resentencing nor sentenced to life without parole. As a result, neither the trial court that imposed the prison sentence for armed robbery in 1985 nor the trial court that addressed defendant's motion for relief from judgment on January 12, 2024, could have operated under the "legal misconception" that defendant "was required to serve a mandatory sentence of life without parole on the greater offense." See *id*. Beyond that, the transcripts of the sentencing hearings conducted on December 20, 1985, and March 1, 1991, leave no doubt that the trial court fashioned defendant's sentence for armed robbery based entirely on its determination of an appropriate sentence for defendant's crime, rather than on a misconception that the sentence for armed robbery would be meaningless because of defendant's sentence for the offense of CSC-I. Indeed, at the resentencing hearing on the CSC-I charge in 1991, the trial court took time to explain the sentence that it had imposed in 1985 for the armed robbery offense. Accordingly, we conclude that the trial court did not abuse its discretion, as a matter of procedure, by leaving undisturbed the sentence for armed robbery despite defendant's procedural objections based on *Turner*.

## B. CONSTITUTIONAL CHALLENGES

Defendant argues that his sentence of 50 to 100 years for armed robbery constitutes "cruel or unusual punishment" in violation of Const 1963, art 1, § 16, which states that "cruel or unusual punishment shall not be inflicted[.]" Citing this Court's decision in *People v Eads*, ___ Mich App ___; ___ NW3d ___ (2025) (Docket No. 357332), defendant characterizes his sentence for armed robbery as unconstitutional because young offenders cannot be subjected to "effectively serving a life sentence" in the form of "a term-of-years sentence" that requires "a period of incarceration of 470 months (approximately 39 years) or more."[2] *Id*. at ___; slip op at 9. Additionally, defendant describes his sentence for armed robbery as unconstitutional because it contravenes the "principle of proportionality" articulated in *People v Milbourn*, 435 Mich 630, 650; 461 NW2d 1 (1990), and its progeny. Indeed, as this Court concluded in *Eads*, ___ Mich App at ___; slip op at 14, "a term of 50 to 75 years' imprisonment is disproportionate to Eads and the circumstances surrounding his offense given his status as a juvenile at the time that he committed the offense and the inherent, constitutionally significant differences between juveniles and adults for purposes of sentencing."

But this appeal differs from *Eads* in one significant respect. In *Eads*, the defendant applied for leave to appeal, see *id*. at ___; slip op at 4, thereby satisfying the requirement of MCR 6.509(A) that "[a]ppeals from decisions under [MCR 6.501 *et seq*.] are by application for leave to appeal to the Court of Appeals pursuant to MCR 7.205(A)(1)." In contrast, defendant in this case filed a claim of appeal of right, disregarding the requirement in MCR 6.509(A), and depriving this Court of its authority to consider whether to grant or deny an application for leave to appeal. Defendant's failure to comply with the universal mandate in MCR 6.509(A) forecloses appellate review of his constitutional challenges at this juncture.[3]

---

[2] That assertion is belied by the facts in the instant case because, at the age of 57, defendant is still very much alive, and he is eligible for parole on October 9, 2027 (according to his appellate brief) or on April 13, 2028 (according to the website of the Michigan Department of Corrections, located at Michigan Department of Corrections, Offender Tracking Information System, Michael Duncan <https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=182057> (accessed July 30, 2025)).

[3] Defendant insists that he is appealing the judgment of sentence entered on April 8, 2024, rather than the denial of his motion for relief from judgment under MCR 6.501 *et seq*., so he can appeal of right the judgment entered after trial. But that characterization of his appeal runs headlong into the bar found in MCR 6.508(D)(2), which states: "The court may not grant relief to the defendant if the motion [for relief from judgment] alleges grounds for relief which were decided against the defendant in a prior appeal . . . unless the defendant establishes that a retroactive change in the law has undermined the prior decision[.]" As we have already explained, this Court and our Supreme Court long ago reviewed and approved defendant's sentence for armed robbery. The judgment of sentence entered on April 8, 2024, leaves no doubt that defendant is incarcerated on the sentence for armed robbery imposed in 1985, rather than the sentence for CSC-I imposed in 2024. Indeed, on this appeal, defendant has not even challenged his new sentence for CSC-I imposed in 2024.

We recognize that this Court has an informal (yet inconsistent) practice of treating mistaken claims of appeal of right as applications for leave to appeal, and then granting those "applications." But as Justice CLEMENT has explained, when this Court recharacterizes a claim of appeal of right as an application for leave to appeal in circumstances that require the submission of an application for leave to appeal, "a limitation on th[is] Court's jurisdiction has been rendered nugatory." *Hart v Michigan*, 506 Mich 857, 865 (2020) (CLEMENT, J., concurring). Here, where there is no room for debate about the jurisdictional requirement under MCR 6.509(A) to file an application for leave to appeal from a decision on a motion for relief from judgment under MCR 6.501 *et seq.*, we must enforce and abide by that requirement.

Dismissed for lack of appellate jurisdiction.[4]

/s/ Michael F. Gadola
/s/ Michelle M. Rick
/s/ Christopher P. Yates

---

[4] This outcome does not leave defendant bereft of the opportunity to obtain relief from his sentence for armed robbery. As defendant notes in his supplemental brief: "If this Court were to determine that his arguments could only have proceeded upon application for leave to appeal, then [appellate] counsel was ineffective in not proceeding by application." And if that is so, defendant can submit a successive motion under MCR 6.501 *et seq.*, contest his armed robbery sentence in the trial court, then file an application for leave to appeal if his challenge on constitutional grounds is rejected. See *People v Swain*, 288 Mich App 609, 631; 794 NW2d 92 (2010) ("The requirement of 'good cause' [in MCR 6.508(D)(3)] can be established by proving ineffective assistance of counsel.").